Argued and submitted September 27, 2007, convictions for first-degree sodomy and first-degree sexual abuse reversed; otherwise affirmed February 13, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOHN DAVID DELP,
*Defendant-Appellant.*

Marion County Circuit Court
03C40480; A126336

178 P3d 259

Bronson D. James, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals a judgment of conviction on two counts of first-degree sodomy, ORS 163.405; one count of first-degree sexual abuse, ORS 163.427; and three counts of first-degree encouraging child sexual abuse, ORS 163.684. He contends that the trial court erred in denying his motion to suppress evidence obtained as a result of an administrative subpoena issued to his Internet service provider and that the evidence was insufficient to support his convictions on the counts of first-degree sodomy and first-degree sexual abuse. We conclude that the trial court did not err in denying the motion to suppress, but that the judgment of conviction as to the two counts of first-degree sodomy and the count of first-degree sexual abuse must be reversed.

The relevant facts are undisputed. In March 2000, an FBI agent, posing as a 14-year-old girl, engaged in an online chat with someone with the screen name "JohnDD33." During the conversation, JohnDD33 asked the purported 14-year-old whether she had "ever been with an older man," suggested that he could travel to Ohio to meet her in person, indicated that he had previously had sexual intercourse with a 12-year-old girl in Indiana, and said that he was planning to have sexual intercourse with a nine-year-old girl who lived about an hour from him. He also sent her pictures of himself (including two nude photographs) and gave his e-mail address as "wstcoastjd" at America Online (AOL).

As a result of that conversation, the FBI believed that JohnDD33 was planning to travel interstate for the purpose of engaging in sexual acts with minors, but the FBI did not know his actual name or address. To obtain that information, the FBI issued an administrative subpoena[1] to AOL

---

[1] In cases of child abuse and sexual exploitation of children, *former* 18 USC § 3486A (1999), *repealed by* Pub L 106-544, § 5(b)(3), 114 Stat 2718 (2000), authorized the Attorney General or the Attorney General's designee to issue a subpoena

"(A) requiring a provider of electronic communication service or remote computing service to disclose the name, address, local and long distance telephone toll billing records, telephone number or other subscriber number or identity, and length of service of a subscriber to or customer of such service and the types of services the subscriber or customer utilized, which may be relevant to an authorized law enforcement inquiry * * *."

requesting the name, address, telephone number, subscriber number, local and long distance telephone billing records, length of service, and types of services utilized for "wstcoastjd@aol.com." AOL complied with the subpoena and disclosed to the FBI that the e-mail address belonged to defendant. AOL also provided defendant's home address.

Based on the information provided by AOL, the FBI applied for and obtained a warrant to search defendant's home. During the search, defendant directed FBI agents to a computer disk containing child pornography. The agents subsequently asked defendant to accompany them to the local FBI office for further questioning, which he did. During that questioning, defendant confessed to, among other things, performing sexual acts on his girlfriend's one-year-old child.

Defendant confessed to the following facts. While defendant was in his house, defendant had sexual conversations over the Internet with strangers. Beginning in January 2000, as he was typing on his computer during these online conversations, defendant exposed himself to his girlfriend's child, placed the child's hands on his penis, and inserted his penis into her mouth. That type of conduct occurred on four separate occasions, most recently on March 26, 2000. On that occasion, defendant was again using his computer and ejaculated into a pink towel after removing his penis from the child's mouth. Defendant further confessed that he had rubbed the child's pubic area to stimulate her and that, while changing the child's diaper, defendant had licked her pubic area for approximately two minutes.

After defendant's confession, a detective from the Salem Police Department questioned defendant's girlfriend. Defendant's girlfriend confirmed that, on March 26, 2000, defendant had acted as a babysitter for her child. She further confirmed that, on other occasions after January 1, 2000, defendant had been with the child when neither she nor other adults were present.

Defendant's girlfriend also confirmed that she and defendant possessed a pink towel, as described in defendant's confession. She gave the detective her consent to search the residence for the towel, and the detective found the towel in the washing machine. The towel had been recently cleaned,

and the Oregon State Police crime lab determined that there was no evidentiary value in processing the towel for the presence of seminal fluid, given the relatively low likelihood of recovery and the potential contamination issues that would be present, even if semen were found.

An FBI computer forensic scientist also examined the computer disc seized from defendant's home, onto which defendant had copied numerous images of child pornography. Defendant previously told an FBI agent that he had delivered those images to approximately 100 people on the Internet.

Following the investigation by state and federal authorities, defendant was charged with, among other things, one count of first-degree sodomy (for oral contact with the victim's vagina); one count of first-degree sodomy (for causing the victim's oral contact with his penis); one count of first-degree sexual abuse (for placing his penis in the victim's hands); and three counts of first-degree encouraging child sexual abuse for possessing, duplicating, and intending to disseminate child pornography.[2]

Before trial, defendant moved to suppress all evidence obtained as a result of the FBI's administrative subpoena issued to AOL. He argued that the issuance of the subpoena constituted an unlawful warrantless search and seizure of evidence under Article I, section 9, of the Oregon Constitution. He further argued that the information obtained from AOL regarding his identity provided the only link between him and the online chat with the FBI agent; thus, without that information, the FBI would not have had probable cause to obtain the warrant to search his home. The trial court, however, agreed with the state that defendant did not have a protected privacy interest in his subscriber information with AOL, and it denied the motion to suppress the evidence.

Defendant waived his right to a jury trial and proceeded to trial on stipulated facts. The predominant issue

---

[2] Defendant also was charged with one additional count of sodomy and two additional counts of sexual abuse. Those charges were dismissed on the state's motion.

before the court was whether the state had offered sufficient evidence—in addition to defendant's confession—to convict him on the counts of first-degree sodomy and first-degree sexual abuse. Defendant argued to the trial court that, under ORS 136.425, a confession must be corroborated by "some other proof that the crime has been committed" and that the state's evidence was insufficient in that regard. The court rejected defendant's argument and convicted him on all counts.

On appeal, defendant first assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of the administrative subpoena issued to AOL. According to defendant, the subpoena violated his rights under Article I, section 9, of the Oregon Constitution, because he had a protected privacy interest in his subscriber information. The state, in response, argues that the Supreme Court has rejected an analogous proposition in the context of cell phone records, *State v. Johnson*, 340 Or 319, 335-36, 131 P3d 173, *cert den*, 127 S Ct 724 (2006), and that defendant has not demonstrated any source of law that establishes his right to keep private any records held by AOL, a third party.

Under Article I, section 9, "a person's right to be free from unreasonable searches extends to those places and things in which the person has a 'privacy interest,' even when there is no physical or sensory invasion into the person's own possessions or space." *Johnson*, 340 Or at 336 (citing *State v. Tanner*, 304 Or 312, 319-20, 745 P2d 757 (1987)). "Moreover, the privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right*." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (citing *Tanner*, 304 Or at 321 n 7) (emphasis in *Campbell*). Whether a person has a protected privacy right in a particular item is an issue of law. *Johnson*, 340 Or at 336.

Oregon appellate courts have not yet addressed whether a person has a protected privacy interest in subscriber information in the possession of an Internet service provider. Our analysis of that question, however, is informed by two recent decisions concerning cell phone records. In *Johnson*, the state subpoenaed the defendant's phone records from his cell phone service provider. The defendant argued

that he had a privacy interest in those phone records because "they pertained to his activities and transactions in areas that the legislature has recognized as private." *Id.* at 335. The Supreme Court rejected that argument:

> "Defendant clearly had a cognizable privacy interest in the *content* of his telephone calls. *See* ORS 133.724 (setting out requirement that police obtain judicially issued warrant to intercept a telephonic communication). However, we cannot identify a source of law that establishes that defendant also had some interest in keeping private any records kept by a third party, his cellular telephone provider, respecting his cellular telephone usage. The cellular telephone provider generated and maintained those records from the provider's own equipment and for the provider's own, separate, and legitimate business purposes (such as billing). * * * Neither are we aware of any principle that would prevent the cellular telephone provider from responding to a proper subpoena."

*Id.* at 336 (emphasis in original). Thus, the court held that the trial court did not err in denying the defendant's motion to suppress evidence of his phone records. *Id.*

We subsequently addressed similar arguments in *State v. Magana*, 212 Or App 553, 159 P3d 1163, *rev den*, 343 Or 363 (2007). There, the defendant argued that, although the court in *Johnson* could not identify a source of law establishing a privacy interest in cell phone records, the court had failed to consider ORS 165.657 to 165.673, a "series of statutes that set out permissible and impermissible uses of 'pen registers' and 'trap and trace devices.' " 212 Or App at 567. After analyzing the statutes cited by the defendant, we concluded that, even assuming that ORS 165.657 to 165.673 created or recognized a protected privacy interest, they also included certain exceptions, one of which specifically allowed a provider of electronic or wire communication devices to use pen registers and trap and trace devices.[3] *Id.* at 569 (citing

---

[3] ORS 165.657(2) defines a "pen register" as

"a device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached, but does not include any device used by a provider or customer of a provider of electronic or wire communication service for billing or recording as an incident to billing for communications services provided by such provider or any device used by a provider or customer of a wire

ORS 165.661(1)). We further observed that "[t]here is no dispute that the cell phone records in this case were created in the course of the regular operations of the cell phone providers[,]" and that the exception was therefore applicable. *Id.*

We next addressed the defendant's argument that ORS 165.657 to 165.673 conferred a privilege with respect to cell phone records that existed until expressly waived. We rejected that argument for two reasons. First, no communicative content was involved. Second, the statutes relied on by the defendant did not express a policy of the law to encourage confidence between cell phone providers and customers or create a privilege in the types of records at issue. 212 Or App at 571.

Here, defendant argues that the subscriber information obtained from AOL is distinguishable from the cell phone records in *Johnson* and *Magana*, because the transaction between an individual and an Internet service provider is different from other business transactions. According to defendant,

> "When activating an account, the individual chooses, or is assigned, a login name and email address. These purposely differ from the individual's real name. Implicit in the relationship between customer and [Internet service provider] is that the Internet service provider creates an alternate persona for the person, so that they may travel the Internet in anonymity, not subjecting their real-life personal data to scrutiny."

Even assuming that some individuals select user names that purposely disguise their identities, and that those individuals do so out of a desire to use the Internet anonymously, those subjective intentions and expectations do not necessarily translate into a protected privacy interest under Article I, section 9. *See State v. Howard/Dawson*, 342 Or 635, 643, 157 P3d 1189 (2007) (declining to decide whether the defendant's subjective expectations of privacy

---

communication service for cost accounting or other like purposes in the ordinary course of its business."

A "trap and trace device" is "a device which captures the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electronic communication was transmitted." ORS 165.657(4).

were reasonable, because the privacy protected by Article I, section 9, is not the privacy that one reasonably expects but the privacy to which one has a right).[4] Here, as in *Johnson*, the information that the government obtained from AOL was independently maintained by AOL for its own purposes. Thus, the question, as in *Johnson*, is whether a source of law establishes that defendant has some interest in keeping private the information maintained by a third party respecting his Internet usage. 340 Or at 336.

Defendant argues that, at the time of the subpoena in this case, federal law prohibited Internet service providers from complying with a request for subscriber information unless the government obtained a warrant or the consent of the subscriber. Defendant relies on 18 USC section 2703(c)(1)(B) (1999),[5] which stated:

"A provider of electronic communication service or remote computing service shall disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications * * *) to a governmental entity only when the governmental entity—

"(i)     obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant;

"(ii)     obtains a court order for such disclosure under subsection (d) of this section;

"(iii)    has the consent of the subscriber or customer to such disclosure; or

"(iv)     submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing * * *."

---

[4] In the Fourth Amendment context, federal courts have "uniformly conclude[d] that internet users have no reasonable expectation of privacy in their subscriber information, the length of their stored files, and other noncontent data to which service providers must have access." *U.S. v. D'Andrea*, 497 F Supp 2d 117, 120 (D Mass 2007) (citing federal cases for that proposition).

[5] We refer throughout this opinion to the 1999 version of 18 USC section 2703, which was in effect at the time that the government subpoena in this case was issued. The statute has since been amended.

Defendant, however, ignores subparagraph (C) of that same statute, which more specifically addresses the information that was provided by AOL in this case. That subparagraph stated:

> "A provider of electronic communication service or remote computing service shall disclose to a governmental entity the name, address, local and long distance telephone toll billing records, telephone number or other subscriber number or identity, and length of service of a subscriber to or customer of such service and the types of services the subscriber or customer utilized, when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under subparagraph (B)."

18 USC § 2703(c)(1)(C) (1999). Thus, contrary to defendant's contention, federal law did not create a protected privacy interest that would prevent AOL from responding as it did to a government subpoena.[6]

Defendant also relies on a number of statutes that he contends demonstrate modern concerns regarding safeguarding personal information. Those statutes, including ORS 165.800, are intended to protect individuals from identity theft; they bear no relation to the disclosure of information by an Internet service provider as part of a criminal investigation.[7]

In sum, as in *Johnson* and *Magana*, defendant has not directed us to any source of law that establishes that he has some interest in keeping private the noncontent information that is held by a third party regarding his Internet

---

[6] Subparagraph (A) of 18 USC section 2703(c)(1) (1999) would appear to further undermine defendant's arguments concerning the anonymity inherent in the relationship between Internet service providers and their subscribers. That subparagraph stated that, except as provided in subparagraph (B), a provider of "electronic communication service or remote computing service may disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications * * *) *to any person other than a governmental entity*." 18 USC § 2703(c)(1)(A) (1999) (emphasis added).

[7] Defendant's arguments regarding those statutes, if correct, would similarly apply to the personal information provided by the cell phone companies in *Johnson* and *Magana*, contrary to the holdings in those two cases.

usage.[8] Nor are we aware of any principle that would prevent AOL from responding to a proper government subpoena concerning his subscriber information. Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress evidence obtained as a result of the FBI's subpoena issued to AOL.

In his second assignment of error, defendant argues that the evidence was insufficient to convict him of first-degree sodomy or first-degree sexual abuse, because the state did not adequately corroborate his confession for purposes of ORS 136.425(1). That statute provides:

> "A confession or admission of a defendant * * * cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed.*"

ORS 136.425(1) (emphasis added). According to defendant, apart from his confession, there is no "other proof" that he committed the crimes of sodomy or sexual abuse.

In response, the state relies on evidence that (1) defendant had access to the alleged victim at times when no other adults were present in the home; (2) the instrumentality used to conceal his acts, the pink towel, was located and seized; and (3) child pornography seized from defendant's computer and his storage disk, as well as his explicit online conversations, demonstrate that he had a sexual interest in young children. According to the state, that evidence "established that defendant had the means and the opportunity to commit the two charges of sodomy and the one charge of sexual abuse with this one-year-old victim," and therefore satisfies the requirement in ORS 136.425(1) that there exist some other proof that those crimes were committed.

This issue requires us to confront, as we recently did in *State v. Simons*, 214 Or App 675, 167 P3d 476 (2007),

---

[8] Defendant does not argue that AOL provided any information regarding the *content* of his Internet communications in violation of Article I, section 9, and we do not address that issue.

*rev den*, 344 Or 43 (2008), the difficult problem that arises under ORS 136.425(1) when the victim of a confessed crime is incapable of recounting—or perhaps even perceiving—the injury or harm to himself or herself, and the record does not contain physical evidence of such an injury or harm. In *Simons*, the defendant, a nursing assistant at a hospital, confessed to having sexual intercourse and other sexual contact with three Alzheimer's patients. In addition to his confession, the state offered evidence that the defendant had engaged in sexual misconduct with coworkers; had professed an interest in older women; had unsupervised access to the patients; and had told another nursing assistant that a patient had responded in a sexual way when the defendant was helping her shower. The state also offered evidence that the demeanor of one of the patients had become angrier, often on mornings following night shifts when the defendant had worked. 214 Or App at 679-80. The defendant moved for a judgment of acquittal on the ground that the evidence was legally insufficient to corroborate the confession, but the trial court denied his motion. *Id*. at 680-81.

■■ On appeal, we reversed. We explained that, under ORS 136.425(1), as that statute was construed in *State v. Lerch*, 296 Or 377, 677 P2d 678 (1984), and subsequent appellate court decisions,[9] the state must offer evidence independent of the confession that tends to prove the *corpus delicti*. *Simons*, 214 Or App at 682. The phrase *corpus delicti* literally means "body of the crime." *Lerch*, 296 Or at 393 (internal quotation marks omitted). Evidence tends to prove the *corpus delicti* of the crime charged if it tends to prove "(1) that the injury or harm specified in the crime occurred, and (2) that this injury or harm was caused by someone's criminal activity." *Simons*, 214 Or App at 682 (citing *Lerch*, 296 Or at 393-94). We further explained in *Simons* that, although it is not necessary that the evidence apart from the confession corroborate every element of the crime, it must tend to establish the *corpus delicti* for *each* offense. *Id*. at 682 (citing *State v. Fry*, 180 Or App 237, 244, 42 P3d 369 (2002)).

---

[9] *See, e.g., State v. Manzella*, 306 Or 303, 759 P3d 1078 (1988). In both *Lerch* and *Manzella*, the court described the various historic formulations of the requirement that confessions be corroborated by other evidence, as well as the legislature's intent in enacting the particular formulation in ORS 136.425(1).

Ultimately, we concluded that the state had failed in *Simons* to offer any independent evidence that tended to prove that harm to the patients had actually occurred:

"Here * * * there was no physical evidence of any kind, no victim or witness statements as to the alleged harm, no testimony that defendant ever acted inappropriately, sexually or otherwise, with any of his patients, and no evidence that he was even in any of their rooms at inappropriate times or when he was not on duty. In sum, the state presented insufficient evidence, apart from the defendant's confession, 'tending to prove' that the harms alleged against [the Alzheimers patients] actually occurred."

*Id.* at 689 (footnotes omitted).

Our reasoning in *Simons* informs our analysis in this case. Here, the state has not presented any evidence, physical or otherwise, that tends to prove harm or injury to the alleged victim. For purposes of this case, the *corpus delicti* for the first-degree sodomy charges is that a person has engaged in "deviate sexual intercourse" with the alleged victim or has caused the alleged victim to engage in such acts. ORS 163.405. The *corpus delicti* of the first-degree sexual abuse charge is that the alleged victim was subjected to sexual contact. ORS 163.427. None of the evidence offered by the state independent of the confession tends to demonstrate or gives rise to an inference that the alleged victim was the subject of the specific acts of sodomy and sexual abuse set forth in the indictment. Said another way, no reasonable juror could infer from defendant's possession of child pornography, his sexual interest in children, the existence of a recently laundered pink towel, and defendant's opportunity to commit the crimes, that the child was the victim of sodomy or sexual abuse, whether those facts are considered separately or together.[10] Thus, the trial court erred in finding defendant

_____

[10] The issue before us is not whether the state offered independent evidence that tends to prove that defendant's confession is *reliable, i.e.* that it should be trusted as evidence that he actually did what he confessed to doing. When the legislature enacted ORS 136.425(1), it eschewed a reliability test in favor of the *corpus delicti* rule. *Lerch,* 296 Or at 393-94. The *corpus delicti* rule, as demonstrated in *Simons* and this case, can make it more difficult to obtain convictions based on confessions of crimes against particularly vulnerable victims. The state's concerns about that result—a result that follows from the language of ORS 136.425(1) as it has been construed in *Lerch*—are properly addressed by the legislature.

guilty with respect to the two counts of first-degree sodomy and the count of first-degree sexual abuse.

Convictions for first-degree sodomy and first-degree sexual abuse reversed; otherwise affirmed.