Submitted May 27, affirmed December 10, 2014, petition for review allowed April 23, 2015 (357 Or 164)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DENNY D. GHIM,**
*Defendant-Appellant.*

Washington County Circuit Court
C111491CR; A152065

340 P3d 753

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Mooney, Judge pro tempore.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals his conviction for first-degree theft and aggravated first-degree theft, arguing that the trial court erred in denying his motion to suppress records obtained from the banks where he and his codefendant wife had accounts. In the trial court, defendant argued that he had a protected privacy interest in those bank records under Article I, section 9, of the Oregon Constitution and that, because the subpoena the state used to obtain those records was not the equivalent of a warrant issued by a neutral magistrate, the state violated his state constitutional rights. The trial court disagreed and admitted those records into evidence at trial. On review for errors of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), we affirm.

The pertinent facts are few and undisputed. An investigator from the Oregon Division of Finance and Corporate Securities began investigating defendant and codefendant after receiving a complaint from a man who had given the couple $16,000 for real estate investments, but did not receive a return on his investment as promised. The investigator subpoenaed bank records, under ORS 192.596,[1] from two banks where defendant and codefendant had accounts. Through those records, the investigator was able to identify individuals who were possibly making investments with defendants. Ultimately, defendant and codefendant were charged with first-degree theft, aggravated first-degree theft, and other crimes. The individuals who had invested with defendants later testified at a bench trial, explaining that they had paid defendants several thousand dollars to be used for real estate investments, but defendants failed to return even the initial investments and later admitted that the deals were not legitimate.

During trial, codefendant filed a motion to suppress, arguing that the bank records should be suppressed

---

[1] ORS 192.596(1) provides that "[a] financial institution may disclose financial records of a customer to a state or local agency, and a state or local agency may request and receive such records, pursuant to a lawful summons or subpoena, served upon the financial institution, as provided in this section * * *." Along with other requirements, that statute requires that the state or local agency issuing the subpoena "make personal service of a copy of it upon the customer." ORS 192.596(2).

because the investigator's subpoenas did not comply with statutory requirements—*e.g.*, the investigator had not provided defendants with notice—and because the subpoenas amounted to search warrants without probable cause in violation of Article I, section 9.[2] The state moved to strike the motion as untimely and argued that, in any event, it should be allowed to correct the defect in the subpoenas by again subpoenaing the records. The court set a new trial date to allow the state to resubpoena the records in accordance with the statutory requirements. The state did so and then filed a response to codefendant's motion to suppress, arguing that an individual generally has no constitutionally protected privacy interest in bank records.

Trial recommenced with a hearing on the motion to suppress. At that hearing, defendant joined in codefendant's motion to suppress. The trial court denied the motion, concluding that defendant and codefendant had no "constitutionally protected personal privacy interest" in the bank records. The court cited decisions by the Oregon Supreme Court and this court holding that a defendant has no protected privacy interest in certain business records held by a third party, including phone records and medical records. In the trial court's view, the same was true for bank records, which are "maintained by the bank to regulate their business," required to be kept by banking laws, and used "to track the money that [the bank has] or the loans that [it has] and who's depositing what and where."[3] The trial court later admitted the bank records into evidence.[4]

---

[2] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[3] The trial court acknowledged that the state investigator had not "follow[ed] the proper procedure in obtaining the original records" because the investigator had failed to give defendants notice, but the court concluded that any infirmity was cured when the state again subpoenaed the bank records. The court reasoned that, "during the course of this investigation, it is abundantly clear that records would have eventually been subpoenaed and uncovered and taken given the nature of this crime," and the state did, in fact, obtain the records by issuing proper subpoenas. Defendant does not challenge that ruling on appeal.

[4] The bank records consisted of account statements, copies of defendant's and codefendant's signature cards and application forms, copies of checks and other instruments negotiated against the accounts, and correspondence, including insufficient fund notices.

On appeal, defendant again argues that, under Article I, section 9, "[a]n individual has a privacy interest in bank records notwithstanding the fact that the records are kept by a third party." To that, the state initially responds that defendant's position is foreclosed by "this court's and the Oregon Supreme Court's consistent view that a person does not have a protected privacy interest in records generated and maintained by a third party." The state further argues that, in any event, the records at issue were not defendant's—they belonged to codefendant—and defendant could not assert a "constitutionally protected privacy interest in another person's bank records."

We start with the state's argument that the records at issue belonged to defendant's wife, codefendant, and, if the state violated Article I, section 9, in obtaining those records, there was no violation of *defendant's* rights. Although the state did not make that argument to the trial court, we may affirm the trial court's judgment as "right for the wrong reason" if certain conditions are met. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). In this case, however, one of those conditions—that "the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below"—is not satisfied. *Id.* at 660. Had the state argued to the trial court that defendant had no privacy interest in the records at issue because they belonged to codefendant, defendant might have been able to offer argument, testimony, or other evidence establishing the nature of his interest in those records. At least some of the bank records are associated with accounts on which defendant was listed as a trustee or as a co-owner.[5] As defendant notes on appeal, he may have been able to establish that, "as a husband with an interest in marital property" or "as a son and trustee ordering the affairs of his incompetent elderly mother," he had a personal interest in the various

_____

[5] The state subpoenaed records of bank accounts "belonging to" defendant, codefendant, and defendant's mother. Several of the account numbers listed in the subpoenas are reported as "belonging to [codefendant] * * * [and defendant]." Defendant's mother's assets were held in a trust, with defendant and codefendant listed as trustees on the trust account. The subpoenaed records were admitted, en masse, into evidence at trial.

records introduced at trial.[6] Accordingly, because the record might have developed differently had the state argued to the trial court that defendant had no interest in the subpoenaed records, we will not affirm on that basis.

We turn, then, to defendant's contention that the trial court erred in concluding that defendant had no protected privacy interest in his bank records under Article I, section 9.[7] Under that provision, "a person's right to be free from unreasonable searches extends to those places and things in which the person has a 'privacy interest,' even when there is no physical or sensory invasion into the person's own possessions or space." *State v. Johnson*, 340 Or 319, 336, 131 P3d 173 (2006). We conclude that the trial court correctly determined that defendant's Article I, section 9, rights did not extend to the records held by his banks.

That result is compelled by decisions of the Supreme Court and this court that have consistently held that, under Article I, section 9, an individual has no protected privacy interest in business records held by a third-party service provider—whether a phone carrier, an Internet provider, or a hospital. In *Johnson*, the Supreme Court rejected the defendant's argument that the state needed a warrant, rather than a subpoena, to obtain "records kept by a third party, his cellular telephone provider, respecting his cellular telephone usage." *Id.* Although the court observed that the defendant "clearly had a cognizable privacy interest in the *content* of his telephone calls," the court concluded that the defendant did not have a protected privacy interest under Article I, section 9, in records "generated and maintained"

---

[6] As a trustee of his mother's trust, defendant may have been able to demonstrate his interest in particular bank records associated with the trust account, which were admitted as individual exhibits during the testimony of one of the state's trial witnesses. Defendant also may have been able to establish his interest in other individual exhibits admitted into evidence, *e.g.*, a check defendant deposited in one of the subpoenaed accounts, and a cashier's check codefendant deposited into an account owned by her and defendant.

[7] Defendant does not argue that he had a privacy interest in the bank records under the Fourth Amendment to the United States Constitution. *See United States v. Miller*, 425 US 435, 96 S Ct 1619, 48 L Ed 2d 71 (1976) (concluding, under the Fourth Amendment, that the defendant had no reasonable expectation of privacy in business records held by his bank).

by the provider "from the provider's own equipment and for the provider's own, separate, and legitimate business purposes (such as billing)." *Id.* (emphasis in original).

That same reasoning informed *State v. Gonzalez*, 120 Or App 249, 251, 852 P2d 851, *rev den*, 318 Or 61 (1993), where we considered hospital records that "included the results of [the] defendant's blood alcohol test and a statement by one of the examining physicians *** that [the] defendant 'appeared intoxicated.'" We concluded that the defendant had failed to "demonstrate that the state significantly interfered with *his* privacy or possessory interests," as "[t]he records subpoenaed by the state were owned, made, kept and guarded by the hospital." *Id.* at 256 (emphasis in original). And in *State v. Delp*, 218 Or App 17, 20, 26-27, 178 P3d 259, *rev den*, 345 Or 317 (2008), we concluded that the defendant did not have a protected privacy interest in records independently maintained by his Internet service provider, which contained "the name, address, telephone number, subscriber number, local and long distance telephone billing records, length of service, and types of services utilized" for the defendant's account. *See also State v. Sparks*, 267 Or App 181, 189-92, 340 P3d 688 (2014) (the defendant had no protected privacy interest, under Article I, section 9, in electric utility records of his account).

Defendant urges a different result here, arguing that the group of statutes in ORS chapter 192 relating to disclosure of financial records "demonstrates that under social and legal norms in Oregon, banking information is private and thus protected by Article I, section 9." We disagree. Although we recognize that ORS chapter 192 generally prohibits a financial institution from disclosing financial records to the state, ORS 192.586, that chapter also sets out a series of exceptions to that general rule, *e.g.*, allowing the state to obtain banking records by subpoena, ORS 192.596. If ORS chapter 192 marks "the bounds of legal and social norms relating to bank records in Oregon," as defendant argues, then one would think that a subpoena, issued by the authority of that same chapter, would be within the bounds of those "legal and social norms." In other words, we do not understand why the legislative decision to impose limited requirements for the disclosure of bank records (*i.e.*,

something less than a warrant) should be read to set a standard under Article I, section 9, that ultimately renders those statutes constitutionally deficient.

Our cases considering third-party records have employed similar reasoning. In *Delp*, for example, we rejected the defendant's contention that a federal statute "create[d] a protected privacy interest" in subscriber information held by Internet service providers under Article I, section 9, because that statute specifically allowed service providers to release subscriber information in response to a government subpoena. 218 Or App at 26; *see also State v. Magana*, 212 Or App 553, 570, 159 P3d 1163, *rev den*, 343 Or 363 (2007) (rejecting the argument that certain statutes created a privacy interest in records of cell phone providers, where the records "were created in the course of the regular operations of the cell phone providers" and did not violate the statutes referenced by the defendant). And more generally, we have declined to recognize a protected privacy interest under the Oregon Constitution because the legislature has adopted a general policy of confidentiality for certain third-party records. With respect to medical records, for example, we concluded that statutes reflecting "a legislative policy of confidentiality for medical records created by third persons" failed to "create constitutionally protected privacy or possessory interests." *Gonzalez*, 120 Or App at 256; *see also Delp*, 218 Or App at 26 (concluding that "a number of statutes that [the defendant] contend[ed] demonstrate modern concerns regarding safeguarding personal information" bore "no relation to the disclosure of information by an Internet service provider as part of a criminal investigation").

Ultimately, defendant offers no way to persuasively distinguish the bank records at issue here from the phone records, Internet service records, medical records, and utility records at issue in *Johnson, Delp, Gonzalez,* and *Sparks.* The bank records, like the records in those cases, were created in the course of the bank's regular operations. And the bank records—memorializing transactions to which the bank was a party and tracking the bank's processing of money into and out of various accounts—were held and maintained by the bank for the bank's own purposes.

Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.