EGAN, C. J.
*2 Defendant was convicted of 10 counts of encouraging child sexual abuse in the first degree, ORS 163.684, based on his guilty plea that, on five separate dates, he had "knowingly duplicated a visual recording of sexually explicit conduct involving a child while [he] was aware of and consciously disregarded the fact that the original creation of that visual recording involved child abuse."[1] Because he had been sentenced for a felony sex crime twice before, the trial court sentenced him to life in prison without the possibility of release or parole. See ORS 137.719.[2] Defendant appeals, asserting that his sentence is unconstitutionally disproportionate as applied to his *592 circumstances under Article I, section 16, of the Oregon Constitution.[3] We affirm. *3 I. FACTS
We begin with the sentencing facts, which include defendant's prior and current convictions, as well as evidence of past instances of relevant uncharged misconduct. State v. Davidson , 360 Or. 370, 375, 380 P.3d 963 (2016) ("In evaluating disproportionality challenges to criminal sentences, it is appropriate for a court to consider any prior conviction, as well as misconduct that did not result in convictions."); State v. Rodriguez/Buck , 347 Or. 46, 78, 217 P.3d 659 (2009) ("Traditional understandings of proportionality, as well as this court's cases, require us to consider whether a defendant is a repeat offender by considering previous criminal convictions and whether there is evidence of multiple instances of uncharged wrongful conduct."). We take those facts from the record, and from the state's sentencing memorandum, which, unless otherwise noted, defendant does not dispute.
A. Prior Convictions
In July 2004, defendant was convicted in the United States District Court for the District of Oregon of one count of possession of child pornography, 18 USC section 2252 (a)(5), and sentenced to 60 months' incarceration. Three other counts were dismissed by motion of the government. The record discloses no further details about that offense.
On September 14, 2004, following a stipulated bench trial, defendant was convicted in Oregon circuit court of two counts of first-degree sodomy, one count of first-degree sexual abuse, and three counts of first-degree encouraging child sexual abuse. We described the facts underlying those convictions in State v. Delp , 218 Or. App. 17, 178 P.3d 259, rev. den. , 345 Or. 317, 195 P.3d 65 (2008), as follows.
In March 2000, an FBI agent, posing as a 14-year-old girl, engaged in an online chat, during which defendant asked the purported 14-year-old "whether she had 'ever been with an older man,' suggested that he could travel to Ohio to meet her in person, indicated that he had previously had sexual intercourse with a 12-year-old girl in Indiana, and said that he was planning to have sexual intercourse with a nine-year-old girl who lived about an hour from him." Id. at 19, 178 P.3d 259.
*4 He also sent her pictures of himself, including two nude photographs, and gave his email address. The FBI traced the conversation to defendant and obtained a warrant to search defendant's home. Id. at 20, 178 P.3d 259. During the search, defendant directed the agents to a computer disk, which contained numerous images of child pornography. Id . During the investigation that followed, defendant also confessed to performing sexual acts on his girlfriend's one-year-old child.[4]
Defendant appealed his convictions, contending, among other things, that the state did not provide sufficient corroborating evidence of defendant's confession to the sodomy and sexual abuse counts, as required by ORS 136.425(1) (2003).[5]
*593 Id. at 27, 178 P.3d 259. We agreed and reversed those convictions. Id . at 29, 178 P.3d 259. We affirmed defendant's convictions for three counts of first-degree encouraging child sexual abuse, and he was ultimately sentenced to a total of 119 months' incarceration on those counts. He served that sentence and was released to post-prison supervision in May 2014.
B. Current Convictions and Uncharged Misconduct
Google reported to the National Center for Missing and Exploited Children that child pornography had been uploaded to Google Drive on November 8, 16, and 22, 2014, and January 24, 2015, from an account associated with *5 defendant. The images depicted infants, toddlers, and prepubescent boys and girls being sexually abused and molested by adults. Additionally, Microsoft reported that a user associated with defendant's email address uploaded child pornography to the user's SkyDrive/One Drive account on January 18, 2015, and January 24, 2015. Those child pornography images depicted prepubescent boys and girls being sexually abused and molested by adults, including vaginal, oral, and anal penetration.[6]
During the investigation that ensued, defendant admitted (among other conduct discussed below) to uploading and duplicating child pornography into the Google and Microsoft cloud services, and he was charged with 10 counts of first-degree encouraging child sexual abuse. He waived a jury trial and pleaded guilty to those charges, admitting that, on five separate dates-November 8, 2014, November 16, 2014, November 22, 2014, January 18, 2015, and January 24, 2015-he unlawfully and knowingly duplicated a visual recording of sexually explicit conduct involving a child while he was aware of and consciously disregarded the fact that the original creation of the recording involved child abuse. See ORS 163.684. He also admitted to two upward departure factors-persistent involvement in similar offenses and multiple victims/incidents.
As part of defendant's plea agreement, the state agreed not to charge him with any additional crimes based on information it had obtained during its investigation. However, the parties also agreed that the state could present that information for the court's consideration at sentencing. Accordingly, the state submitted a sentencing memorandum describing the results of its investigation. Defendant also submitted a sentencing memorandum. Except as noted, defendant did not dispute the state's description of the facts.
The investigation revealed that defendant had uploaded a total of 536 images and videos of child pornography in his Google and Microsoft cloud storage services, including *6 depictions of children engaged in acts of sexually explicit conduct with men, women, other children, and dogs. According to the National Center, 77 of the children depicted in those files were known and identified victims who were rescued. Defendant's smartphone contained 467 photos and videos of child pornography, including images of infants and toddlers being sexually abused. Sixty-eight of those images depict children who were identified and rescued.
During a recorded interview, defendant admitted that he had uploaded, copied, and distributed child pornography using his smartphone through email, online storage devices, and messaging applications, engaging in that activity at various locations in Marion County. He further stated that he viewed the child pornography for his own sexual arousal and masturbation and that he talked to other people online about his interest in child pornography.
Further, defendant "admitted to communicating with people he believed may be engaged in contact sexual abuse of children"; he also communicated with people he believed *594 to be minor girls and sometimes requested and received sexually explicit images from them, although he denied ever meeting them in person.
In addition, he admitted to participating in internet chat rooms and using a text messaging application on his smartphone to communicate with other people to exchange child pornography. The state's memorandum included a transcript from one of those exchanges in which a woman describes to defendant how she sexually abused two toddlers while their father filmed it. The memorandum also described defendant's text communications with a 17-year-old girl living in Georgia and, later, Florida, in which defendant requested and induced the minor to produce and send to defendant "several dozens of sexually explicit images of herself." Defendant also sent her sexually explicit images of himself.[7]
*7 At the sentencing hearing, defendant asserted that a sentence of life without the possibility of release or parole-or "true life"-under ORS 137.719(1) was unconstitutionally disproportionate as applied to him under Article I, section 16.[8] Relying on our opinion in State v. Davidson , 271 Or. App. 719, 745, 353 P.3d 2 (2015) (Davidson I ), aff'd , 360 Or. 370, 380 P.3d 963 (2016) (Davidson II ), he argued that, because his crimes "exclusively involved the duplication of existing child pornography" and not crimes involving force or violence, under Davidson I , a true-life sentence in his circumstances would violate Article I, section 16. The trial court rejected that argument, explaining, in part:
"This is not a defendant who's unaware of the harmfulness, the criminality of the images that he was possessing and uploading. He had ample opportunity to be aware of that in his prior criminal processes. It's not a defendant who's youthful or otherwise would seem likely to benefit from some opportunity at treatment. It's not a defendant whose only danger lies in viewing and therefore promoting the production of abusive images.
"I do find on this record that the defendant also constitutes a threat of contact pedophilia. Certainly the direct messaging of people whom he believed to be minors is itself significantly harmful in a way that's different from and more contact-like than the child pornography offenses themselves. Soliciting child pornography from those people who he perceived to be minors; perhaps he's done worse.
"Certainly this Court finds that he is a significant threat of contact, pedophilic crimes. In these circumstances * * * the presumptive sentence of true life is just and appropriate. It's * * * really a matter of the safety of the community. It's the only sentence that will provide the security, the knowledge that the Defendant won't be able to make himself that sort of threat to the children in our community in the future."[9]
*8 Accordingly, as noted, the court imposed concurrent sentences of life without the possibility of release or parole on each count of conviction.
II. ANALYSIS
On appeal, defendant reprises his argument that his sentence is unconstitutionally disproportionate as applied to him under Article I, section 16, for essentially the same reasons he articulated below. As we explain, we reject that argument and affirm the trial court.
*595 Article I, section 16, provides, in part, that "all penalties shall be proportioned to the offense." In evaluating a particular sentence for compliance with Article I, section 16, the foundational question is whether the length of the sentence "shocks the moral sense" of reasonable people. State v. Wheeler , 343 Or. 652, 668, 175 P.3d 438 (2007). Because the legislature has primary authority to determine the gravity of an offense and the appropriate length of punishment, a court may say that a particular punishment is constitutionally disproportionate only in those "rare circumstances" where the legislature has exceeded that authority. Id. at 670, 175 P.3d 438.
The court considers three factors when assessing an as-applied proportionality challenge: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." Rodriguez/Buck , 347 Or. at 58, 217 P.3d 659. However, there is a nuance to that three-factor test where, as here, the sentence is imposed pursuant to a recidivism statute-that is, a statute that establishes enhanced sentences for repeat offenders. State v. Althouse , 359 Or. 668, 684, 375 P.3d 475 (2016). In that circumstance, "the first and third of those factors overlap in comparing the severity of the penalty and the gravity of the crimes that gave rise to the repeat offender sentence." Id . at 685, 375 P.3d 475 ; Davidson II , 360 Or. at 382, 380 P.3d 963 (recognizing and applying that standard). In explaining its reasoning, the Supreme Court in Althouse reiterated that
" '[h]abitual criminal [statutes] are based upon the belief that the criminal, as well as the crime, is a material *9 factor to be considered in fixing the sentence. If the criminal is a menace to the community, his sentence should be aimed at offering the most protection to the community, regardless of the relative innocuousness of the particular crime for which he is now convicted.' "
359 Or. at 684, 375 P.3d 475 (quoting Tuel v. Gladden , 234 Or. 1, 6, 379 P.2d 553 (1963) (brackets in Althouse )). Whether an enhanced sentence under a recidivism statute for repeat sexual offenders "shocks the moral sense" thus " 'depend[s] upon the seriousness of repetitive sexual conduct of th[e] kind [punished by the statute] and the danger that it forecasts for others unless the defendant is segregated from society.' " Id . at 685, 375 P.3d 475 (quoting Jensen v. Gladden , 231 Or. 141, 144-45, 372 P.2d 183 (1962) (second and third brackets in Althouse )).
We analyze the constitutionality of defendant's sentence according to that framework.
A. First and Third Rodriguez/Buck Factors
As noted, the first and third Rodriguez/Buck factors essentially "coalesce" when considering an as-applied challenge to a sentence under ORS 137.719(1), meaning that we assess the severity of the penalty against the gravity of the current offense and the gravity of the defendant's criminal history, rather than focusing on the gravity of the last offense that the defendant committed. Althouse , 359 Or. at 686, 375 P.3d 475. That includes the "specific circumstances of the charged and uncharged offenses" that comprise that history.[10] Id.
*10 As he did below, defendant argues that, because his offenses consisted entirely *596 of possessing and duplicating images of child pornography, not "forcible or violent" crimes or ones that involve "directly touching raping or sodomizing another person," they are less serious than other crimes for which a presumptive life sentence applies under the statute or other cases where the court has found the sentence to be proportionate. He also argues that, had the statute not applied, he would have been subject to a much lesser presumptive sentence under the sentencing guidelines, 41 to 45 months for each count. Accordingly, in defendant's view, the severity of a true life sentence is disproportionate to the gravity of his crimes.[11] We disagree with defendant's assessment, for several reasons.
First , defendant minimizes the severity of his crimes of first-degree encouraging child sexual abuse, a Class B felony. The "use" of child pornographic materials "necessarily involve[s] the harming of a child." State v. Stoneman , 323 Or. 536, 550, 920 P.2d 535 (1996). Indeed, "each duplication of the visual recording constitutes a revictimization of the child depicted." State v. Reeves , 250 Or. App. 294, 310-11, 280 P.3d 994, rev. den. , 352 Or. 565, 291 P.3d 737 (2012) (internal quotation marks and brackets omitted). Thus, in State v. Parker , 259 Or. App. 547, 550-51, 314 P.3d 980 (2013), rev. den. , 355 Or. 380, 328 P.3d 696 (2014), we rejected the defendant's argument that the conduct of downloading child pornography lies on the "less severe" end of the spectrum of conduct addressed within ORS 163.684, emphasizing that the crime of first-degree encouraging child sexual abuse is "inextricably and irreversibly tied to the sexual abuse of vulnerable children." Significantly, we also rejected the theory-as defendant seems to be arguing here-that the severity of the crime is mitigated by an absence of physical harm, noting that the crime is directed toward particularly vulnerable victims, that is, "the children who are being sexually abused and whose images are duplicated for sexual gratification." Id . at 551, 314 P.3d 980.
As the state described it, the child pornography images underlying the 10 charges to which defendant pleaded guilty *11 were "beyond horrifying," showing children "being raped by adults *** [and] children being forced to do sexual[ ] things to each other, being directed by other offenders within the photos themselves." Defendant does not contest that description. Moreover in addition to those counts, the undisputed evidence establishes that defendant downloaded hundreds of other photos and videos of child pornography, which included images of infants and toddlers being abused by adults and depictions of bestiality involving children. Many of the children shown in the photos and videos were identified and known victims. And, all of the children depicted suffered harm from defendant's conduct in downloading those images.
Second , defendant fails to seriously confront his extensive history of other conduct targeted to the sexual exploitation of children-a factor that is of "considerable significance" given that he was sentenced pursuant to a recidivism statute. State v. Sokell , 360 Or. 392, 398, 380 P.3d 975 (2016). Defendant was previously convicted in federal court of possession of child pornography and three counts of first-degree encouraging child sexual abuse in state court. Defendant was investigated for the latter crimes after he communicated online with a person he believed to be a 14-year-old girl, suggested that he could travel to Ohio to meet her in person, indicated that he had previously had sexual intercourse with other young girls, and sent her nude pictures of himself. Delp I , 218 Or. App. at 19, 178 P.3d 259.
Moreover, in the course of the investigation that led to the present charges, defendant admitted to participating in internet chat rooms and otherwise communicating with other people to talk about and exchange child pornography-including communicating with people he "believed may be engaged in contact sexual abuse of children." In one such instance, defendant and a woman exchanged text messages describing the woman's sexual abuse of two young children, while another adult filmed the abuse. Defendant also communicated with people he believed to be minor girls and sometimes requested *597 and received sexually explicit images from those girls, including a girl living in Florida, who, at least during some of their exchanges, was under the age of *12 18. That history reflects that defendant poses a significant danger to children.
Third , defendant's criminal history of exploitive and sometimes predatory behavior is long standing, beginning in 2000, and lesser criminal sanctions have not deterred him. He committed his current offenses for first-degree encouraging child sexual abuse within months after being released from custody after serving a lengthy prison sentence for the same offenses. He was on post-prison supervision at the time and was prohibited from using the internet or possessing any device capable of accessing the internet. Nonetheless, he used his cell phone to access and upload child pornography, talk with other people online about child pornography, and exchange sexually explicit images with minor girls through email. Thus, he had opportunities to reform his criminal behavior, but did not. See Davidson II , 360 Or. at 387, 380 P.3d 963 ("[O]ne of the purposes of statutes that provide enhanced penalties for repeat offenders is to recognize that some offenders simply are not deterred by criminal sanctions and such people likely will continue to re-offend if released from confinement."); Althouse , 359 Or. at 687-88, 375 P.3d 475 ("[A]n inability to reform one's conduct despite repeated opportunities to do so * * * can justify the legislature's decision to impose a life sentence without the possibility of parole.").
Finally, we disagree with defendant that the facts in this case are like Davidson and therefore compels the conclusion that his sentence is disproportionate. In that case, the defendant was convicted of two counts of public indecency, ORS 163.465, for exposing himself at a public park. Davidson II , 360 Or. at 372, 380 P.3d 963. He received consecutive true-life sentences under ORS 137.719(1) because he had two prior felony convictions for public indecency.[12] Id. The Supreme Court concluded that such a severe sentence violated under Article I, section 16, as applied to the defendant. Id.[13]
*13 In analyzing the first and third Rodriguez/Buck factors under the Althouse construct, the Supreme Court noted that the crime of public decency standing alone is a misdemeanor, which merits, at most, up to one year of incarceration. Id. at 385, 380 P.3d 963. Here, by contrast, the crime at issue is a Class B felony, which carries a maximum incarceration term of 10 years. ORS 161.605. Most significantly to our analysis here, the court focused on the type of harm that the defendant posed, given his criminal history. The court emphasized that, although that history indicated that the defendant was "highly resistive to reform," nothing suggested that he "prey[ed] on children," that he "has specifically targeted children to observe his [public indecency] acts, or that he has committed such acts in the course of or in furtherance of other crimes that target children, as was the circumstance in Althouse ." Id . at 386, 380 P.3d 963. The court also observed that the defendant's history "did not include sexual offenses that entailed physical contact with victims or that appeared to specifically target child victims ." Id . at 387, 380 P.3d 963 (emphasis added). Thus, considering the "seriousness of the repetitive sexual conduct" involved and "the danger it forecast for others," the court concluded that the severe penalty imposed-life in prison without the possibility of parole-fell outside the limits of what Article I, section 16, allowed in the circumstances.
Here, by contrast, the entirety of defendant's crimes and criminal history, including his history of uncharged criminal misconduct, reflect a pattern of repetitive sexual behavior directly targeting child victims. Some of his conduct also appeared to be in furtherance of other crimes that targeted children-specifically, in the online communications that led *598 to his convictions in Delp I , defendant indicated that he wanted to meet the minor child in person to commit sexual acts against her, suggesting that he had done so previously. Those circumstances, combined with the fact that lesser sanctions have not deterred defendant, and the seriousness of the harm generated by the use of child pornography, suggest that, unlike in Davidson II , defendant here poses a significant danger to the public, particularly children, if he is not confined. *14 Accordingly-being very mindful that a sentence of life without the possibility of parole is the most severe penalty that can be imposed aside from death-we conclude that the first and third Rodriguez/Buck factors support the constitutionality of defendant's sentence.[14]
B. Second Rodriguez/Buck factor
We turn to the second factor-a comparison of the penalties imposed for related offenses. See Rodriguez/Buck , 347 Or. at 63-65, 217 P.3d 659. As to that factor, defendant argues that "there are combinations of sex crimes that do not trigger the application of the recidivist statute that are much more severe than the combination of crimes for which defendant received a true-life sentence," thus suggesting that his sentence is disproportionate. The Supreme Court rejected the identical argument in Althouse , explaining:
"If *** defendant's sentence is constitutionally proportionate as applied to his criminal history, it is difficult to see how it advances his as-applied challenge to his sentence to argue that the legislature also could have imposed a life sentence on others who commit additional sex crimes. *** Beyond that, defendant's argument assumes a proposition that this court has never suggested-that there must be a perfect proportionality among the sentences for all related offenses before an individual sentence will be proportioned to the offense within the meaning of Article I, section 16."
359 Or. at 691-92, 375 P.3d 475. He also briefly argues that his sentence is disproportionate because it is more severe than the presumptive sentence for "the most serious crimes," such as attempted aggravated murder and several first-degree crimes, such as manslaughter, assault, kidnapping, rape, sodomy, sexual penetration, and arson, when committed by an offender with an extensive criminal history. However, he does not explain why those crimes are properly considered in the second-factor analysis as "related" offenses. See *15 Davidson II , 360 Or. at 388, 380 P.3d 963 (in applying the second Rodriguez/Buck factor, we "consider the penalties imposed for other crimes that have similar characteristics to the crime at issue " (emphasis added)); Rodriguez/Buck , 347 Or. at 64, 217 P.3d 659 (discouraging courts from "roam[ing] freely through the criminal code, deciding which crimes are more or less serious than others," because that is primarily the province of the legislature). Thus, the second factor also supports our conclusion that defendant's sentence is not constitutionally disproportionate.
III. CONCLUSION
Given defendant's extensive history of sexually exploiting children, involving a multitude of victims who were harmed by his conduct, and the danger that defendant poses to the public by his repetitive sexual behavior, we conclude that this is not one of those rare cases in which the legislatively mandated repeat offender sentence violates Article I, section 16.
Affirmed.

Encouraging child sexual abuse in the first degree, a Class B felony, is defined in ORS 163.684 :
"(1) A person commits the crime of encouraging child sexual abuse in the first degree if the person:
"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells a visual recording of sexually explicit conduct involving a child or knowingly possesses, accesses or views such a visual recording with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or
"(B) Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, a visual recording of sexually explicit conduct involving a child; and
"(b) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

ORS 137.719(1) provides that "[t]he presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence." ORS 137.719(2) allows the court to instead impose a sentence under the sentencing guidelines, "based upon findings of substantial and compelling reasons"; the court declined to do that here.
Defendant was sentenced to life imprisonment without the possibility of release or parole on each of his 10 convictions, to be served concurrently. For ease of discussion-and because it does not affect the analysis-we refer to defendant's sentences in the singular in this opinion.

Defendant also contends that his sentence is unconstitutionally disproportionate under the Eighth Amendment to the United States Constitution. However, as the state correctly points out, defendant did not preserve that argument before the trial court. Nor does he assert on appeal that we should exercise our discretion to review it as plain error. Accordingly, we do not address that question. ORAP 5.45(1).

Specifically, defendant confessed to the following:
"While defendant was in his house, defendant had sexual conversations over the Internet with strangers. Beginning in January 2000, as he was typing on his computer during these online conversations, defendant exposed himself to his girlfriend's child, placed the child's hands on his penis, and inserted his penis into her mouth. That type of conduct occurred on four separate occasions, most recently on March 26, 2000. On that occasion, defendant was again using his computer and ejaculated into a pink towel after removing his penis from the child's mouth. Defendant further confessed that he had rubbed the child's pubic area to stimulate her and that, while changing the child's diaper, defendant had licked her pubic area for approximately two minutes."
Delp , 218 Or. App. at 20, 178 P.3d 259.

At the time of defendant's trial, ORS 136.425(1) provided, in part, that a confession alone is not "sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed." In 2009, the legislature amended ORS 136.425, and enacted what became ORS 136.427, to provide an exception to that rule when, among other requirements, the defendant is charged with a sex crime, the victim is a vulnerable person, the victim is incompetent to testify, and the court finds that there is "sufficient evidence to establish the trustworthiness of the confession." See Or. Laws 2009, ch. 875.

The trial court declined to view the images, which the state had available at sentencing on a secure iPad, and they are not part of the record. We take those descriptions from the state's sentencing memorandum, which, as noted below, defendant does not dispute.

Defendant contended below that the court should not give weight to those two incidents because (1) there was no evidence that what the first woman described in her text message was true, and (2) "the alleged 17 year old claimed to be a college student who by her account turned 18 years old during the communication." Defendant acknowledged, however, that some of the images had been exchanged before the girl turned 18.

There is no dispute that the statutory predicates for a true-life sentence under ORS 137.719(1) were met.

The court also rejected defendant's alternative argument that the court should impose a downward departure sentence based on two mitigating factors-(1) that the predicate convictions were close in time and no additional criminal conduct occurred between sentencing on the first and second predicate offenses, and (2) defendant's cooperation with the investigation.

Defendant suggests that the facts surrounding his first-degree sodomy and first-degree sexual abuse convictions are not properly part of his criminal history for this purpose because those convictions were overturned on appeal in Delp I . The state does not dispute that assertion; accordingly, we do not include those facts in our analysis.
However, we note that defendant's convictions were reversed because, at the time, ORS 136.425 (2003) prohibited a conviction based on a confession alone, and there was insufficient evidence to corroborate defendant's confession to the crimes. However, ORS 136.425 (2003) did not (and does not now) prohibit the use in evidence of such a confession, as it does explicitly, in the same statute, with regard to the use of a confession obtained under fear caused by threat. See ORS 136.425 (2003) ("A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed."). See also ORS 136.425(1), (2) (maintaining that distinction).

Defendant does not acknowledge the overlay to the Rodriguez/Buck factors articulated in Althouse and Davidson II , which were decided after he filed his brief.

Those crimes involved the defendant masturbating in public. Davidson II , 360 Or. at 373, 380 P.3d 963.

As noted, defendant focuses on our analysis in Davidson I . We, of course, consider defendant's argument in light of the Supreme Court's analysis in Davidson II , which applies Althouse 's framework for evaluating a defendant's criminal history in the context of a recidivist statute.

As noted, defendant also argues that his sentence is disproportionate when compared to the 41- to 45-month presumptive sentence for the crime under the sentencing guidelines. To the extent that that is even relevant in the context of a recidivist statute, as the state points out, each count involved a separate victim; therefore the court could have imposed consecutive sentences totally 450 months. Moreover, defendant admitted to the existence of two upward departure factors, which would support a total sentence of 900 months' incarceration, or 75 years.