370 September 22, 2016 No. 62

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DENNIS JAMES DAVIDSON,
*Respondent on Review.*

(S063387) (Control)

STATE OF OREGON,
*Respondent on Review,*

*v.*

DENNIS JAMES DAVIDSON,
*Petitioner on Review.*

(S063480)

(CC 11C43121; CA A150292;
SC S063387 (Control), SC S063480)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 9, 2016.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review/ respondent on review State of Oregon. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Solicitor General.

Ernest G. Lannet, Chief Defender, Salem, argued the cause and filed the brief for respondent on review/petitioner on review Dennis James Davidson.

Jordan R. Silk, Portland, filed the brief on behalf of *amici curiae* Oregon Justice Center. With him on the brief was Alexander A. Wheatley.

_____

* On appeal from Marion County Circuit Court, Dale W. Penn, Judge. 271 Or App 719, 353 P3d 2 (2015).

BREWER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for resentencing.

**BREWER, J.**

Defendant was convicted of two counts of public indecency under ORS 163.465 for exposing himself at a public park; because he had two prior felony convictions for public indecency, and the trial court found no ground for downward departure, defendant was sentenced consecutively on each count to life imprisonment without the possibility of parole under ORS 137.719(1).[1] The Court of Appeals affirmed defendant's convictions but held that the sentences violated Article I, section 16, of the Oregon Constitution, which provides that all penalties shall be proportioned to the offense.[2] *State v. Davidson*, 271 Or App 719, 353 P3d 2 (2015). Defendant sought review in this court, arguing that the Court of Appeals erred in upholding his convictions. The state also sought review, asserting, first, that defendant's sentences are unreviewable because they are "presumptive" sentences and, second, that the sentences were not unconstitutionally disproportionate in light of the facts of this case and the circumstances of defendant's previous crimes. We allowed both petitions. As explained below, we affirm defendant's convictions, but we conclude that the sentences are unconstitutionally disproportionate as applied to defendant. Accordingly, we affirm the decision of the Court of Appeals, and we reverse defendant's sentences and remand to the circuit court for resentencing.

This case presents some of the same issues that we recently addressed in *State v. Althouse*, 359 Or 668, 375 P3d 475 (2016). *Althouse*, in fact, forecloses the state's reviewability argument, and we therefore reject that argument without further discussion. *See id.* at 678 (holding that ORS 138.222(2)(a) does not preclude review of sentence of life imprisonment without possibility of parole imposed pursuant to ORS 137.719). In addition to its reviewability

---

[1] ORS 137.719(1) provides:

"The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence."

[2] Article I, section 16, provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

holding, *Althouse* set out a framework for the consideration of as-applied constitutional challenges to sentences imposed pursuant to ORS 137.719. Accordingly, we first address defendant's challenge to his underlying convictions under ORS 163.465 and then evaluate the constitutionality of the life sentences imposed for those convictions under the framework set out in *Althouse*.

## I.   FACTS AND PROCEDURAL HISTORY

### A.   *Current Convictions*

Because the jury found defendant guilty of the current charges, we view the evidence presented at trial in the light most favorable to the state. *State v. Agee*, 358 Or 325, 327, 364 P3d 971 (2015). A group of women and children were having lunch in a park in Salem when defendant walked by and waved at them. After the older children left the group to play on a nearby play structure, a man came by and told the group that defendant was behind a nearby tree. One of the women, Davis, looked over her shoulder and could see defendant peeking out at her from behind the tree.

When Davis stood up and turned, she was able to see that defendant was exposing his genitals and masturbating. Davis called 9-1-1 and gathered her group together to return to their car. As they left, defendant approached and told Davis several times that he was leaving; he then left through the south end of the park. Responding officers searched the area to the south of the park and found defendant standing at a fence bordering the park, looking into the park. As the officers approached defendant, they could see that he had his pants open and was masturbating. Defendant was then arrested and subsequently charged with and convicted by a jury of two counts of public indecency, one count for the incident near Davis's group and the other count for the incident at the border of the park shortly before he was apprehended.

### B.   *Prior Public Indecency Convictions*

Defendant's prior convictions for public indecency were relevant to his sentencing on his current convictions, because the prior convictions elevated those offenses

from misdemeanors to felony public indecency. *See* ORS
163.465(2).[3] In the guilt phase of the trial in this case, for
the purpose of establishing that the current offenses were
properly charged as Class C felony offenses, defendant
stipulated to the existence of three prior public indecency
convictions. The details of defendant's prior convictions, as
described below, were presented in a presentence investiga-
tion report in the course of the sentencing proceeding.[4]

 In 2006, defendant was convicted of the crime of
misdemeanor public indecency and placed on probation.
That offense occurred when defendant was observed by a
neighbor while defendant was standing on the porch of a
house and masturbating. When defendant saw the neighbor,
he called out to her, "you want some of this?" as he continued
to masturbate. The neighbor called the police. Nobody was
home at the house when the incident occurred, but, when
questioned by the police, defendant claimed to have been
visiting "Amy" at the house and suggested that he had some
sort of intimate relationship with "Amy." Defendant even
described some items inside the house. The police later con-
tacted the homeowner, who was not named "Amy," and she
denied knowing defendant. The police also discovered that
defendant's grandmother lived near the house where the
offense occurred, that defendant had stayed with his grand-
mother at some point in time, and that his grandmother
had entered his bedroom and discovered him masturbating
while looking out the window toward the house where the
offense later occurred. Finally, the police located a letter in
defendant's backpack written by defendant to another per-
son, stating that he had a crush on her and had watched her
mow her lawn. The woman who owned the house where the
offense occurred acknowledged that she regularly mowed the

---

[3] ORS 163.465(2) provides:

 "(a) Public indecency is a Class A misdemeanor.

 "(b) Notwithstanding paragraph (a) of this subsection, public indecency
is a Class C felony if the person has a prior conviction for public indecency or
a crime described in ORS 163.355 to 163.445 or for a crime in another juris-
diction that, if committed in this state, would constitute public indecency or
a crime described in ORS 163.355 to 163.445."

[4] At sentencing, defendant also made a personal statement to the court, but
neither party presented additional evidence beyond what was contained in the
presentence investigation report.

lawn around her house. The woman subsequently obtained a stalking protective order against defendant.

Defendant was convicted of misdemeanor public indecency arising out of the incident on the porch, and he was sentenced to probation for that offense. Several months later, while defendant was on probation for that offense, a number of school staff members reported that they had observed defendant expose his genitals while masturbating near an elementary school playground. One of those staff members indicated that, when defendant saw her looking at him through a window, he turned to face her as if he wanted her to observe him. Three children also saw defendant near the school, although the record did not indicate whether they saw him expose his genitals. Defendant was convicted of public indecency for that conduct, and, because he had a prior misdemeanor public indecency conviction, his conviction for the school incident was elevated to a felony under ORS 163.465(2). Defendant served a 28-month prison sentence for that conviction.

Shortly after defendant was released from prison on his sentence for the school incident, defendant again was arrested for and convicted of felony public indecency. In that incident, a group of women (who had a child with them) were near their car in a store parking lot when they observed defendant looking at them while he exposed his genitals and masturbated. When the police arrived, an officer also observed defendant masturbating in the parking lot. After defendant was apprehended, he told the police that he had been masturbating inside a nearby pornography shop and that he had masturbated in front of the women after he left the store because he thought that it would make the women "hot" and that he would be able to get a "date."

C.    *Other Prior Convictions and Misconduct*

In evaluating disproportionality challenges to criminal sentences, it is appropriate for a court to consider any prior conviction, as well as misconduct that did not result in convictions. *Althouse*, 359 Or at 679; *State v. Rodriguez/ Buck*, 347 Or 46, 78, 217 P3d 659 (2009). In the present case, the presentence investigation report indicated that defendant first came into contact with police at age 10, when he

was accused of shoplifting a toy.[5] He was first referred to the juvenile court at age 14 based on a fighting incident at his junior high school; that referral was disposed of informally. When he was in his late teens and early twenties, defendant had numerous contacts with law enforcement, primarily involving possession of controlled substances. He also was arrested twice for battery based on fights with his girlfriend, but those charges were dismissed. He was convicted on one occasion of trespass and investigated for trespass based on several other incidents, some of which arose in conjunction with the public indecency incidents described above. Defendant also had a single prior conviction for driving while suspended.

Most of defendant's convictions for offenses other than public indecency resulted in probationary sentences. The record shows that defendant consistently performed poorly on probation and post-prison supervision, regularly committing new offenses while under supervision, as well as failing to appear at various hearings concerning probation violations. While incarcerated, defendant received sanctions for misconduct (generally for disobedience) on numerous occasions. Defendant has been diagnosed with various substance dependence disorders, as well as with a cognitive disorder due to a traumatic brain injury that occurred when he was a teenager.

D.   *Sentencing*

At defendant's sentencing, the state argued that a sentence of life imprisonment without the possibility of parole was appropriate, noting in particular that defendant's first two public indecency offenses were committed in a brief time interval, that the third offense occurred within days after he was released from prison on the prior offenses, and that the current crimes also occurred within days of his release from prison for the third offense. For the most part, the state's focus at sentencing was not on the specifics of any of the public indecency offenses themselves (other than

---

[5] Defendant does not challenge the trial court's consideration of evidence of his prior misconduct and other criminal offenses contained in the presentence investigation report.

noting that they caused harm to the victims), but rather on defendant's recidivism.

In response, defense counsel emphasized the fact that none of defendant's offenses involved violence or physical contact with anyone; he argued that a life sentence without the possibility of parole is simply too harsh a punishment for masturbating in public, even for a repeat offender. In his own statement at sentencing, defendant showed little or no understanding that society views his public sexual behavior as unacceptable.[6]

The circuit court noted that, under ORS 137.719, the presumptive sentences for defendant's current convictions were life imprisonment without the possibility of parole and concluded that it could not identify any mitigating factor that would justify downward departures from those presumptive sentences.[7] Accordingly, the court sentenced defendant to consecutive life sentences without the possibility of parole on the current convictions.

E.  *Appeal*

Defendant appealed, arguing that (1) his convictions should be reversed because the trial court had erred in failing to give a requested jury instruction on attempted public indecency; and (2) his sentences should be reversed because the life sentences without the possibility of parole that the court imposed were unconstitutionally disproportionate under Article I, section 16. Defendant did not argue that ORS 137.719 is facially unconstitutional. Rather, he asserted that the application of that statute in the present circumstances was unconstitutional under Article I, section 16, because the penalty was disproportionate to the

---

[6] Defendant's statements were consistent with the opinions of several mental health professionals who had evaluated him over the years. For example, the report of defendant's 2009 mental health evaluation states:

"He has obviously distorted sexual attitudes and opinions, believing that women might be attracted to him by masturbating in public in their presence."

[7] Defendant did not assert before the circuit court, nor has he asserted on appeal or review, that his mental health circumstances, including his apparent lack of appreciation for the criminality of his conduct, amount to a mitigating factor in assessing the proportionality of his sentences. We therefore do not consider that issue here.

offense. Defendant emphasized that public indecency historically has been a misdemeanor offense under Oregon law, *see* ORS 161.615(1) (maximum term of imprisonment for highest-level misdemeanor offense is one year), and he urged that the penalties imposed in this case were disproportionate in comparison to sentences for other offenses of similar or greater gravity.

        The Court of Appeals rejected defendant's jury instruction argument without discussion, but it agreed with defendant that, as applied to his circumstances, the life sentences imposed on the two convictions for public indecency were unconstitutionally disproportionate and, therefore, reversed those sentences and remanded to the circuit court for resentencing. *Davidson*, 271 Or App at 721 n 4, 745.

        The state sought review of the Court of Appeals' decision with respect to defendant's sentences, and defendant sought review of the Court of Appeals' disposition of his assignment of error relating to the jury instruction. We granted both petitions for review, and, for the reasons explained below, we affirm the decision of the Court of Appeals with respect to both issues.

## II.   CHALLENGE TO DEFENDANT'S CONVICTIONS

        We first consider defendant's challenge to his convictions. ORS 163.465(1) provides:

   "A person commits the crime of public indecency if while in, or in view of, a public place the person performs:

   "(a)   An act of sexual intercourse;

   "(b)   An act of deviate sexual intercourse; or

   "(c)   An act of exposing the genitals of the person with the intent of arousing the sexual desire of the person or another person."

Defendant was charged under paragraph (c) of that statute.

        At trial, defendant moved for a judgment of acquittal, arguing that the state was required to prove that, when he exposed himself, he intended other people to see what he was doing, and asserting that a person who surreptitiously

masturbates in a public place but does not intend to be viewed by others does not violate that statute. That is, defendant argued, the state was required to prove that defendant exposed his genitals with the intent to arouse sexual desire *by being seen exposing himself in public*, not simply that he exposed his genitals intending to arouse sexual desire and that that act occurred in, or view of, a public place. The trial court denied defendant's motion for judgment of acquittal.

Subsequently, in a colloquy regarding jury instructions, defense counsel requested an instruction on attempted public indecency, arguing: "[I]n this case, because especially in count two, or the second time [defendant] encountered someone else, no one else was around to see him and when he was seen, he fled. It could be seen as an attempt[.]" When the trial court asked for further clarification about how the evidence could support an attempt conviction, counsel indicated that the instruction could potentially apply to both counts, adding: "Well, because 'exposed,' your Honor, can be a couple of things. The fact that [Davis] had to get up and adjust her viewpoint to see what was going on, [defendant] was not putting himself on display." Defense counsel did not specify precisely how he wanted the jury to be instructed on attempted public indecency, but it is apparent from the quoted colloquy that he sought the "attempt" instruction as a basis for arguing to the jury that the state's evidence was insufficient to prove that defendant was trying to be observed when he committed the "act of exposing the genitals" described in ORS 163.465(1)(c), an argument similar to the one that he had made in support of the motion for judgment of acquittal.

"A party is generally entitled to a jury instruction based on its theory of the case if the instruction is warranted by the particular facts and correctly states the law." *State v. Washington*, 355 Or 612, 653, 330 P3d 596 (2014). We presume that defendant wanted a standard instruction on "attempt" that followed the text of the attempt statute and thus would have been a correct statement of the law. Under ORS 161.405(1), an attempt crime occurs when a person "intentionally engages in conduct that constitutes a substantial step toward commission of the crime." The conduct

that constitutes the substantial step must "(1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." *State v. Walters*, 311 Or 80, 85, 804 P2d 1164 (1991). In sum, an attempt instruction is appropriate when the evidence could support a finding that the defendant specifically intended to commit a crime and took a substantial step toward doing so, but did not complete the crime.

Defendant's argument in this case, by contrast, was not that the evidence permitted an inference that he intended to carry out the charged offenses of public indecency but did not complete them. Rather, his argument was that the state was required to prove that he intended to arouse himself by being observed exposing himself in public, and the state failed to prove that he had the requisite intent to commit the crimes at all. Stated differently, defendant's theory was that no public indecency crime was committed because he lacked the requisite intent to commit that offense.

So understood, an attempt instruction based on ORS 161.405 would not have advanced defendant's theory of the case. If defendant's theory were correct, he would not have been guilty of either an attempt—in that he would have lacked the requisite specific intent to carry out that offense—or the completed offense. Accordingly, even assuming that defendant's theory of the case was sound—an issue that we do not reach in this case—an attempt instruction would not have been an appropriate vehicle for advancing the argument that defendant lacked the requisite intent to commit the charged crime.[8] It follows that the trial court did not err in declining to give the requested attempt instruction.

### III.   AS-APPLIED CHALLENGE TO DEFENDANT'S SENTENCES

We now turn to the state's argument that the Court of Appeals erred in concluding that defendant's sentences were unconstitutionally disproportionate under Article I, section 16. As discussed, defendant had been convicted of

---

[8] As noted, defendant advanced the same theory of the case in his motion for judgment of acquittal. He did not, however, assign error on appeal to the denial of that motion.

felony sex crimes as defined in ORS 163A.005 twice before being sentenced for the present offenses, and, thus, he presumptively was subject to the sentences of life imprisonment without the possibility of parole that the trial court imposed pursuant to ORS 137.719. In its full text, that latter statute provides:

"(1)   The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence.

"(2)   The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons.

"(3)   For purposes of this section:

"(a)   Sentences for two or more convictions that are imposed in the same sentencing proceeding are considered to be one sentence; and

"(b)   A prior sentence includes:

"(A)   Sentences imposed before, on or after July 31, 2001; and

"(B)   Sentences imposed by any other state or federal court for comparable offenses.

"(4)   As used in this section, 'sex crime' has the meaning given that term in ORS 163A.005."

After the Court of Appeals issued its decision in this case, we decided *Althouse*, 359 Or 668. In that case, we considered a challenge to the application of ORS 137.719 to convictions for felony public indecency offenses under ORS 163.465. The defendant in *Althouse*, like defendant here, had been convicted of felony public indecency after already having been convicted of prior sexual offenses, thus triggering the application of ORS 137.719. We observed in that case that the framework for the analysis of an as-applied disproportionality challenge to a true-life sentence under ORS 137.719 requires consideration of the following factors:

"'(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant.'"

*Althouse*, 359 Or at 684 (quoting *Rodriguez/Buck*, 347 Or at 58). We further held in *Althouse* that, when a sentence is enhanced based on the defendant's repeat-offender status, additional considerations come into play. For example, if the defendant "'is a menace to the community, his sentence should be aimed at offering the most protection to the community, regardless of the relative innocuousness of the particular crime for which he is now convicted.'" *Althouse*, 359 Or at 684 (quoting *Tuel v. Gladden*, 234 Or 1, 6, 379 P2d 553 (1963)). We stated that the constitutionality of an enhanced sentence for repeated sexual offenses would "'depend on the seriousness of repetitive sexual conduct of th[e] kind [punished by the statute] and the danger that it forecasts for others unless the defendant is segregated from society.'" *Althouse*, 359 Or at 685 (quoting *Jensen v. Gladden*, 231 Or 141, 144-45, 372 P2d 183 (1962) (brackets in *Althouse*)). We concluded that, in the context of enhanced sentences for repeat offenders, "the first and third of [the factors identified in *Rodriguez/Buck*] overlap in comparing the severity of the penalty and the gravity of the crimes that gave rise to the repeat offender sentence." *Althouse*, 359 Or at 685.

In considering the first and third *Rodriguez/Buck* factors in *Althouse*, we stated:

"We may agree with defendant that public indecency, considered in isolation, is not as serious as some other sex crimes. That much follows from the legislature's classification of that offense. The legislature has classified public indecency as a misdemeanor unless the defendant previously has been convicted of public indecency or another specified sex crime, in which case the offense is classified as a Class C felony. ORS 163.465(2). This is not a case, however, in which defendant's criminal history consists of a single conviction for public indecency, nor is it a case in which the three convictions that resulted in a presumptive life sentence under ORS 137.719(1) are three felony public indecency convictions. Rather, this is a case in which defendant, over a 30-year period, has been convicted of sexual abuse and sodomy of his own and other people's children,

as well as public indecency. And many of the charged and uncharged instances in which defendant has engaged in public indecency during that 30-year period have been directed at or related to children."

359 Or at 687. We noted in *Althouse* that the defendant's criminal history "reflect[ed] a deeply ingrained pattern of predatory behavior" and concluded that, "[g]iven the seriousness of [the] defendant's repeated sexual misconduct and the danger that it forecasts for others, we cannot say that imposing a presumptive life sentence in response to [the] defendant's pattern of criminal behavior violated Article I, section 16." *Id.* We further concluded that "an inability to reform one's conduct despite repeated opportunities to do so *** can justify the legislature's decision to impose a life sentence without the possibility of parole." *Id.* (citing *Tuel*, 234 Or at 7).

We then examined the second *Rodriguez/Buck* factor. With respect to that factor, the defendant in *Althouse* had argued that ORS 137.719 covers numerous offenses, some of which are much more serious than others, and thus "that three relatively low-level sex crimes can give rise to the same presumptive life sentence under ORS 137.719(1) as three far more serious sex crimes." In addressing that argument, we noted that the legislature, not the court, is primarily responsible for ranking the severity of offenses, subject to the caveat that, if the penalties for similar, yet more "serious" crimes result in less severe sentences, the challenged penalty may be unconstitutionally disproportionate. *Althouse*, 359 Or at 689. We nevertheless rejected the defendant's comparative arguments that his sentence was more severe than the sentence for other, related crimes. We observed that (1) ORS 137.719 "does not *require* the same life sentence no matter how disparate the combination of convictions that give rise to a repeat-offender sentence under that statute"; and (2) "[a] trial court may impose a downward departure sentence under ORS 137.719(2) for less egregious combinations of offenses." *Id.* at 690 (emphasis added). We ultimately concluded in *Althouse* that, because the defendant's "sentence appears proportionate to his particular criminal history, the comparisons that he invites us to make provide no reason to hold that a life sentence, as applied to

him, is disproportionate in violation of Article I, section 16." *Id.* at 692.

We now turn to the application of the factors identified in *Rodriguez/Buck*, as expanded on in *Althouse*, to the present case. Under the first and third factors set out in *Rodriguez/Buck*, we examine the gravity of the current offenses and the severity of the penalty imposed for it, in light of defendant's criminal history. As noted, defendant first was convicted of misdemeanor public indecency in 2006, based on an incident in which he masturbated on the porch of a woman in whom he had taken a sexual interest but did not know. A neighbor observed his conduct, and the woman on whose porch he committed the offense ultimately obtained a stalking protective order against him. Because defendant did not have prior convictions for sexual offenses, that public indecency crime was a Class A misdemeanor under ORS 163.465(2).

Defendant's other two public indecency convictions— the ones that subjected him to enhanced sentences under ORS 137.319(1) in this case—were not misdemeanors. Rather, as noted, those convictions were classified as felonies under ORS 163.465(2)(b) because of his previous misdemeanor conviction for public indecency. Defendant's second conviction, as described above, involved indecent exposure in view of several adults on a school playground where children were present. His third offense involved exposing himself in a public parking lot in view of a number of people, and where a child was present. All the prior offenses were observed by private citizens who were disturbed by defendant's conduct. Moreover, the first prior offense caused a significant amount of fear to a person who did not directly witness defendant exposing himself; as noted, the woman on whose porch defendant masturbated was concerned enough about his behavior to obtain a stalking protective order. Thus, the circumstances of defendant's past public indecency offenses demonstrated that they caused harm to others, and that they often had at least the potential to cause even greater harm due to the presence of children nearby.

The two current public indecency convictions obviously are of greater concern in light of defendant's significant

history of committing similar offenses. The first of the two current offenses involved conduct in a public park where—despite defendant's intimations to the contrary—numerous people had the ability to see what he was doing. The second incident involved masturbation near the same public park, shortly after defendant had fled and presumably was aware that he was being pursued. That he resumed his masturbation activities under those circumstances is consistent with what his criminal history implies—that he has little control over his behavior or understanding of the socially unacceptable nature of his conduct. In addition, defendant's lengthy history of committing other minor crimes, his lack of success while under supervision, and his other nonsexual misconduct all indicate that he is highly resistive to reform.

That said, the issue before us is the proportionality of a life sentence without the possibility of parole for a series of offenses that, if viewed in isolation and without consideration of criminal history, would be misdemeanors that each would merit, at most, incarceration for a period not to exceed one year. As we stated in *Althouse*, the constitutionality of the sentence will "'depend on the seriousness of the repetitive sexual conduct'" as well as the "'danger that it forecasts for others[.]'" 359 Or at 685 (quoting *Jensen*, 231 Or at 144-45). The primary danger identified here is that defendant's repeated behavior will continue to cause upset and possible harm to people who observe him exposing himself and masturbating.

The state asserts that that danger is very serious, citing a study that indicates that nearly 29 percent of the people who witness acts of public exhibitionism have increased fear of sexual crime. *See* Sharon Riordan, *Indecent Exposure: The Impact Upon the Victim's Fear of Sexual Crime*, Journal of Forensic Psych, vol 10, No 2, 309, 313, 315 (1999). The state asserts that defendant's history supports a conclusion that he deliberately targets others, noting that, when he committed his first offense, he called out, "You want some of this?" to the neighbor who observed him; that one of the school employees who observed his second offense thought that he wanted her to see him masturbate; and that when he was apprehended after his third offense, he indicated that he

thought that women who observed him masturbating might become sexually attracted to him. The state describes that cited conduct as "aggressive" behavior toward "vulnerable" members of the public.

Although we do not take such harm lightly, that type of harm stands in contrast to the harms at issue in *Althouse*. In that case, the defendant, who had a significant history of exposing himself in public, also had a lengthy history of sexually abusing children, including attempting to establish contact with children at or near the time he was exposing himself. 359 Or at 679-81. Unlike the defendant in *Althouse*, nothing in defendant's criminal history or history of other misconduct indicates that he specifically preys on children or that he has sexually abused a child. *Cf. Jensen*, 231 Or at 144-45 (upholding life-with-possibility-of-parole sentence for public indecency, where defendant previously had committed felony sex offense against a child). Although the state is correct that defendant apparently has no inhibitions about committing the crime of public indecency in the presence of children, and such behavior clearly puts children at risk of harm if they observe it, the record does not suggest that he has specifically targeted children to observe his acts, or that he has committed such acts in the course of or in furtherance of other crimes that target children, as was the circumstance in *Althouse*.

More generally, unwillingly observing sexual behavior by another person is not a harm of the same magnitude as being specifically and personally subjected to unwanted physical sexual contact or sexual violence. Defendant's behavior, while not passive and certainly reprehensible to those witnessing it, was not aggressive in the sense that he actively pursued victims or attempted to have physical contact with them; instead, he generally showed sexual interest in whomever happened to observe him.[9]

---

[9] Although there was evidence that defendant did, in fact, have a specific sexual interest in the woman on whose porch he masturbated when he committed his first public indecency offense, that person did not witness the crime. Rather, a neighbor of that woman witnessed the crime. There was no evidence that defendant either intended to expose himself to the woman on whose porch he stood or that defendant's exposure of himself to the neighbor was anything other than opportunistic.

To recapitulate with respect to the first and third *Rodriguez/Buck* factors (gravity of the offense compared to the severity of the penalty, and defendant's criminal history), public indecency generally can be considered either a high-level misdemeanor or a low-level felony, depending on the perpetrator's criminal history. ORS 163.465(2). It involves the exposure of a defendant's genitals in a public place or in view thereof, with the intent to arouse sexual desire, but it does not require that there be any physical contact with another person. ORS 163.465(1)(c). In terms of gravity, it is not as serious as a sexual offense that involves nonconsensual sexual contact or sexual behaviors targeting children, which, as discussed below in our evaluation of the second *Rodriguez/Buck* factor, generally carry greater sentences. The penalty involved—life imprisonment without the possibility of parole—is the most severe penalty available under Oregon law, other than the death penalty, which is available only in certain cases of aggravated murder.[10] Defendant's criminal history, although lengthy and varied, almost exclusively consisted of low-level offenses; it did not include sexual offenses that entailed physical contact with victims or that appeared to specifically target child victims. Those considerations all tend to support defendant's argument that his sentences of life imprisonment without the possibility of parole are disproportionate under Article I, section 16.

On the other side of the scale, the state accurately observes that defendant's criminal history demonstrates that lesser criminal sanctions have not deterred him from re-offending. As this court stated in *Tuel*, one of the purposes of statutes that provide enhanced penalties for repeat offenders is to recognize that some offenders simply are not deterred by criminal sanctions and such people likely will continue to re-offend if released from confinement. 234 Or at 6-7; *see also Althouse*, 359 Or at 685 (same). Nonetheless, that consideration is only one among others, and, as indicated

---

[10] In *Kennedy v. Louisiana*, 554 US 407, 128 S Ct 2641, 171 L Ed 2d 525, *modified on denial of reh'g*, 554 US 945, 129 S Ct 1, 171 L Ed 2d 932 (2008), the United States Supreme Court held that imposition of the death penalty for the rape of a child was unconstitutional under the Eighth Amendment to the United States Constitution. The Court stated: "As it relates to crimes against individuals, *** the death penalty should not be expanded to instances where the victim's life was not taken." *Id.* at 438.

above, the other considerations under the first and third *Rodriguez/Buck* factors that are at issue here suggest that imposing a sentence of life imprisonment without the possibility of parole on a defendant who commits crimes such as these, and whose criminal history does not reflect that he poses a significant physical danger to the public, does not comport with Article I, section 16.

Our consideration of the second *Rodriguez/Buck* factor reinforces that assessment. In applying that factor, we consider the penalties imposed for other crimes that have similar characteristics to the crime at issue in this case. 347 Or at 65. It is useful to compare the seriousness of similar crimes that may result in the same penalty as defendant's sentence, as well as to examine similar yet more serious crimes that may result in a lesser sentence than the one imposed on defendant. *Id.* at 74-76. Looking at the seriousness of similar crimes that may result in the same penalty as defendant's sentence, we note that, unlike felony public indecency, most of the other felony sex crimes that may result in the imposition of a true-life sentence under ORS 137.719 involve nonconsensual sexual contact or sexual exploitation of child victims.[11] A considerable number of those felonies (including first- and second-degree rape, first-degree sexual abuse, unlawful sexual penetration, sodomy, and kidnapping) carry mandatory minimum sentences of at least 70 months imprisonment. ORS 137.700(2). The remaining felonies are ranked under the Oregon Sentencing Guidelines between categories 5 and 10, with the majority being in the higher ranges. Presumptive sentences in those ranges can vary from between probation and 60 months' imprisonment for offenders with no criminal history, to between 15 and 130 months' imprisonment for offenders with extensive criminal histories. Most of the listed offenses are ranked higher (more seriously) in the Sentencing Guidelines than is felony public indecency. Felony public indecency also is one of the few crimes on the list that does not require—although

---

[11] ORS 163A.005(5), is partially incorporated by reference in ORS 137.719(1), lists both felony and non-felony sex crimes. ORS 137.719(1) applies only if the prior sex crimes were felonies, so the entire compendium of offenses contained in ORS 163A.005(5) are not necessarily "related crimes" for purposes of our disproportionality analysis.

it certainly may have—an identifiable victim. In light of those considerations, we conclude that the gravity of the offense of public indecency is relatively minor in comparison with the majority of the other sex offenses identified in ORS 163A.005(5) that may result in a true-life sentence under ORS 137.719. *Cf. Rodriguez/Buck*, 347 Or at 61 (where a statute criminalizes "broad range of activity" and defendant "is convicted for engaging in only more minor conduct encompassed within the statute, the defendant may plausibly argue that the mandatory sentence, as applied to the particular facts of his or her case, is unconstitutionally disproportionate").

Turning to similar yet more serious crimes that may result in a lesser sentence than the one imposed on defendant, we note that, in *Rodriguez/Buck*, this court discouraged "roam[ing] freely through the criminal code, deciding which crimes are more or less serious than others." *Id.* at 64. In that case, which involved convictions for first-degree sexual abuse, the court concluded that the pertinent related offenses were sexual offenses set out in ORS 163.305 to 163.479. We reach the same conclusion here, given that public indecency is one of the statutes in that range.

Most of the sexual offenses described in ORS 163.305 to 163.479 are felonies that are "sex crimes" under ORS 163A.005(5) and, thus, are subject—in some circumstances—to the same type of sentence that defendant received here. Some, however, are not. For example, purchasing sex with a minor, a felony, is only considered a "sex crime" under some circumstances. ORS 163.413; ORS 163A.005(5)(v). As another example, third-degree sexual abuse is a Class A misdemeanor and may involve (1) nonconsensual sexual contact; (2) sexual contact with a person under the age of 18; or (3) propelling blood, urine, semen or feces at a nonconsenting person with the intent of arousing sexual desire. ORS 163.415. In addition, contributing to the sexual delinquency of a minor, which involves sexual intercourse with a person under the age of 18, also is a Class A misdemeanor. ORS 163.435. Sexual misconduct with a person under the age of 18 is a Class C misdemeanor. ORS 163.445. Second-degree custodial sexual misconduct, which involves sexual contact with a person in custody or

on supervision by a supervisor, is a Class A misdemeanor. ORS 163.454. Private indecency, which is similar to public indecency, except that it involves exposure of genitals at a location where the victim has a "reasonable expectation of privacy," similarly is a Class A misdemeanor. ORS 163.467. Unlawful dissemination of an intimate image, which can be either a Class A misdemeanor or a felony, and involves disclosure of intimate images on the internet for the purpose of harassing, humiliating, or injuring another, is not a "sex crime" for purposes of ORS 137.719(1). ORS 163.472. Unlawfully being in a location where children regularly congregate, an offense that applies only to those previously designated as sexual offenders, is a Class A misdemeanor. ORS 163.476. And finally, unlawful contact with a child, ORS 163.479, another offense that applies only to offenders who previously have committed sexual offenses, and which involves contact with a child "with the intent to commit a crime or for the purpose of arousing or satisfying the sexual desires of the person or another person," is a Class C felony that is not listed under ORS 163A.005(5) and therefore not subject to ORS 137.719(1).

        We have no difficulty in concluding that most of, if not all, the sexual offenses described above that are not within the purview of ORS 137.719(1)—and, thus, not subject to a presumptive true-life sentence—can be viewed as being at least as serious as public indecency. Indeed, the two that are arguably the most similar (because they involve nonconsensual conduct for the purpose of arousing sexual desire) are private indecency, which involves intrusion into a place where a victim has a reasonable expectation of privacy, and the type of sexual abuse that involves flinging blood, urine, semen or feces at another person. Both those offenses are classified as misdemeanors. In sum, in light of the other sexual offenses set out in ORS chapter 163 and their respective penalties, we conclude that a life sentence without the possibility of parole for public indecency is among the harshest sentences available under Oregon law when the gravity of the offense is compared to the severity of the penalty.

        We do not mean to suggest that the inclusion of public indecency in ORS 137.719(1) is facially unconstitutional. Indeed, we upheld the facial constitutionality of that statute

in *State v. Wheeler*, 343 Or 652, 175 P3d 438 (2007). And, as noted, we rejected an as-applied challenge to a life sentence under that statute for public indecency most recently in *Althouse*, 359 Or 668. But where, as here, a criminal defendant—even an incorrigible one—has a criminal history that includes no offenses more serious than public indecency (and no other misconduct that otherwise supports a conclusion that he poses a significant physical danger to society), a sentence of life imprisonment without the possibility of parole for public indecency is unconstitutionally disproportionate under Article I, section 16.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for resentencing.