BALMER, C. J.,
concurring.
I agree with the majority’s conclusion that, on this record, where defendant introduced undisputed evidence of his intellectual disability and of his intellectual functioning as similar to that of a 10-year-old, it was error for the trial court not to consider that evidence in determining whether the imposition on him of the mandatory Measure 11 sentence for first-degree sex abuse was disproportionate under Article I, section 16, of the Oregon Constitution.
Defendant advanced a broad theory that a defendant’s “reduced culpability” or “blameworth [iness] ”—because of intellectual disability (as in this case) or youth or, presumably, mental illness or other individual factors affecting judgment and conduct—is always relevant in determining whether a mandatory sentence is constitutionally disproportionate. I disagree with that theory, for reasons discussed below, but the majority takes a narrower and more defensible approach.
Two related aspects of the majority opinion are particularly significant to me. First, a diagnosis of intellectual disability has been relied upon by the United States Supreme Court and by this court as a factor to be considered in determining whether a defendant may be subject to the death penalty. Atkins v. Virginia, 536 US 304, 122 S Ct 2242, 153 L Ed 2d 335 (2002); State v. Agee, 358 Or 325, 364 P3d 971 (2015), adh’d to as modified on recons, *627 358 Or 749, 370 P3d 476 (2016). Second, to respond to the obvious rejoinder that no court has extended the Atkins rationale to conclude that imprisonment for a term of years (mandatory or not) is unconstitutionally cruel or disproportionate, see, e.g., Harris v. McAdory, 334 F3d 665, 668 n 1 (7th Cir 2003), cert den, 541 US 992 (2004), the majority relies on ORS 161.290(1), which provides, “A person who is tried as an adult in a court of criminal jurisdiction is not criminally responsible for any conduct which occurred when the person was under 12 years of age.” That statute expresses a kind of societal consensus, recognized by legislative enactment, that children under the age of 12 lack the maturity that would permit the state to charge and punish them as adults. The majority, of course, does not argue that ORS 161.290(1) precludes all punishment of defendant, or of children under the age of 12.
Here, defendant not only presented expert testimony that he is intellectually disabled, but also introduced undisputed evidence that, because of his low IQ score and significantly impaired adaptive functioning, his intellectual functioning is at a mental age of approximately 10. Defendant, of course, was an adult at the time of his crime, and was considered competent to stand trial, so ORS 161.290(1) does not absolve him of criminal responsibility for his conduct. With that statute as a marker for “criminal responsibility,” however, it would be anomalous for the sentencing court not to at least consider defendant’s intellectual disability in determining whether the mandatory Measure 11 sentence of 75 months is disproportionate under Article I, section 16, as applied to him. For that reason, in the specific circumstances presented here, I agree with the majority.
It is important, however, to respond to defendant’s broader argument about relative culpability in sentencing and to explain why that argument, although appropriate in establishing sentencing policy or imposing a particular sentence within legislative parameters, will rarely be sufficient to support an as-applied constitutional challenge under Article I, section 16.
I agree with defendant that a just and nuanced sentencing policy would give a judge at least some discretion, *628 in imposing a criminal sentence, to take into account personal characteristics, including intellectual disability, and the possibility that an intellectually disabled person may be less morally culpable in some sense for his or her criminal conduct than a person whom defendant describes as “normally abled.” In my view, the legislature should revisit the statutes that prevent courts from considering, when imposing a Measure 11 sentence, intellectual disability, youth, immaturity, or other mental or psychological limitations that may affect behavior.[1] Appropriate legislation would give the courts discretion to impose a sentence more tailored to a particular defendant and crime, rather than imposing the current mandatory minimum sentence; and perhaps also could provide additional guidance as to the kinds of personal characteristics that may affect a defendant’s legal culpability and, if reduced culpability is found, the relationship between that reduced culpability and the kind of sentence that would be proportionate to the defendant’s offense.
But that is not the sentencing law that the people and the legislature have put in place for Measure 11 offenses, such as the 75-month mandatory minimum sentence for first-degree sexual abuse that the court imposed on defendant here. Oregon’s statutory sentencing provisions for Measure 11 offenses permit only the most limited consideration of personal characteristics, degree of culpability, mitigating facts, or the impact of the Measure 11 sentence on a particular defendant.
*629 As a consequence, defendant must rely solely on the claim that his sentence was not “proportioned to the offense” and therefore was unconstitutional under Article I, section 16, as interpreted in State v. Rodriguez/Buck, 347 Or 46, 217 P3d 659 (2009). And defendant’s basic assertion is that a court imposing a substantial, mandatory sentence must consider, in applying Article I, section 16, any personal characteristics “that mitigate [] culpability.” Here, of course, the individual characteristic at issue is intellectual disability, but defendant also argues that “youth” or “adolescence” is such a characteristic and the Court of Appeals has said the same about “mental problems” caused by strokes. State v. Sanderlin, 276 Or App 574, 576, 368 P3d 74 (2016). Indeed, nothing in defendant’s logic suggests any limit on the kind of personal characteristic that would “mitigate culpability,” and the category would seem to include any intellectual, psychological, or other condition that might affect a defendant’s judgment, mental state, or conduct. I agree that, in many circumstances, such factors probably should be considered in determining an appropriate sentence—and would be in a more rational sentencing scheme than Measure 11—but that does not mean that such consideration is constitutionally required.
Moreover, defendant offers no suggestion as to what the constitutionally required metric would be for determining the “lesser degree of culpability” that would lead to a lesser sentence for a person with such reduced culpability, compared to any other person who committed the same acts. And, assuming that such a person is less culpable in some legal sense, defendant is silent on the metric or standard for determining how the Measure 11 sentence should be adjusted (and presumably reduced) to reflect that lesser culpability and render the sentence constitutionally valid.
To show why defendant’s underlying theory is problematic as a constitutional argument requires a brief review of our Article I, section 16, cases. This court repeatedly has emphasized that “the legislature has primary authority to determine the gravity of an offense and the appropriate length of punishment,” State v. Althouse, 359 Or 668, 683-84, 375 P3d 475 (2016), and that it will only be “in rare circumstances” that a court will find that a legislatively prescribed *630 penalty violates Article I, section 16, State v. Wheeler, 343 Or 652, 670, 175 P3d 438 (2007). Rodriguez /Buck was one of those rare cases, and defendant understandably relies primarily on that case. In Rodriguez/Buck, this court engaged in a detailed review of the defendants’ specific acts and a comparison of those acts with the acts of other defendants convicted of the same offense (first-degree sexual abuse, ORS 163.427). It also compared defendants’ acts with acts that would constitute other sex crimes, as well as the sentences for those crimes. 347 Or at 63-65, 67-76. This court concluded that the mandatory 75-month sentences imposed for each defendant’s single conviction for first-degree sexual abuse, when defendants had no prior criminal history of any kind, were constitutionally disproportionate as applied to .those defendants. Id. at 78-80. In deciding that case, this court identified several factors to consider in making that constitutional determination, including “a comparison of the severity of the penalty and the gravity of the crime.” Id. at 58.
Defendant focuses solely on that factor and, in particular, on the “gravity of the crime.” But his argument goes substantially beyond anything in Rodriguez/Buck. There, this court grappled with the term “offense” in Article I, section 16, because establishing the relative seriousness—or gravity—of the offense is necessary to determine whether the penalty is proportionate. Id. at 59. The court described the “offense” as “the specific defendant’s particular conduct toward the victim that constituted the crime, as well as the general definition of the crime in the statute.” Id. at 62. That definition made no mention of any required level of culpability or mental state, other than its implicit reference to the mental state required to prove the crime at issue. The court listed a number of considerations that could be appropriate in determining the “offense” in any specific case, including “the specific circumstances and facts of the defendant’s conduct,” “characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim.” Id.
As noted, defendant’s argument appears to extend the constitutional inquiry to include any personal “characteristic” that might “mitigate” a defendant’s “culpability.” *631 Although it may be entirely appropriate, as matter of policy or logic, to examine all of a defendant’s personal “characteristics” to determine whether a defendant might be considered “less culpable” than one without those characteristics, Rodriguez/Buck certainly did not so hold, nor has any other case from this court.[2] Instead, we ordinarily have focused on objective factors, such as the defendant’s actual conduct. In Rodriguez/Buck, for example, the defendants, like defendant here, engaged in conduct that came within the terms of the statutory definition of first-degree sexual abuse. Id. at 55-56. They did not claim to be “less culpable” because of any personal characteristic; rather, they argued that the actual conduct they engaged in was so limited, particularly compared to the conduct in other reported first-degree sexual abuse cases and to conduct under other sexual abuse statutes for which similar mandatory sentences are imposed, that the 75-month sentences were disproportionate as applied to their crimes. Id. at 57. Rodriguez/Buck does not discuss either personal characteristics or degrees of culpability at all. Similarly, in State v. Davidson, 360 Or 370, 380 P3d 963 (2016), we held a criminal sentence to be disproportionate based on a detailed review of the specific conduct and its relatively limited impact on the victims, again with no discussion of how the defendant’s mental state or other psychological factors might have reduced his “culpability.”
Defendant’s argument for an expansive view of individual characteristics that may mitigate or reduce a person’s “culpability” compared to others who engage in the same conduct, despite its theoretical appeal, also would encounter serious obstacles in application. Of course, culpability, or mens rea, has played a role for thousands of years in thinking about proportionality. See Thomas A. Balmer, Some Thoughts on Proportionality, 87 Or L Rev 783, 785-86 (2008) (discussing history of mens rea in proportionality). Every defendant’s mental state is critical in determining *632 what crime they have committed, or whether they have committed any crime at all. The same conduct—for example, killing another by running over the person with a car— might constitute murder or even aggravated murder, first or second degree manslaughter, criminally negligent homicide, or aggravated vehicular homicide, or no crime at all, depending on the defendant’s culpability. To differentiate levels of culpability, our criminal code defines different mental states, see ORS 161.085, and specifically defines “culpable mental state” to mean “intentionally, knowingly, recklessly, or with criminal negligence,” as those terms are used in that statute. ORS 161.085(6). That scheme generally imposes more serious penalties for the same conduct when the wrongdoer acts “intentionally” or “knowingly,” as opposed to acting negligently. In those circumstances, it is not inaccurate to say, informally, that the wrongdoer who acted intentionally was “more culpable” than the person who was negligent. See Solem v. Helm, 463 US 277, 292-93, 103 S Ct 3001, 77 L Ed 2d 637 (1983) (discussing “culpability” by similarly examining the “seriousness” of the criminal conduct and statutory mental states).
Similarly, as discussed, our criminal code provides that a child who is tried as an adult for conduct that occurred before the child was 12 “is not criminally responsible” and may assert a defense of “incapacity due to immaturity.” ORS 161.290. And if a person, as a result of a mental disease or defect, commits a criminal act but, at the time, “lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law,” that person will be found “guilty except for insanity,” ORS 161.295, and will be subject to different sanctions than a person without such a mental disease or defect.
Thus, the criminal code, arbitrary as it may be in some particulars, itself establishes specific levels of “culpability” depending upon a defendant’s mental state, including lack of culpability for certain children and for those with certain mental diseases or defects. Those gradations are important to the criminal code’s stated purposes and principles, which include “prescribing] penalties which are proportionate to the seriousness of offenses.” ORS 161.025(1)(f); see also ORS 161.025(1) (identifying other *633 purposes and principles of the criminal code). If the statutes defining criminal offenses and the sanctions for them did not differentiate between crimes based, at least in part, on the different levels of “culpability”—if, for example, the death penalty were imposed for intentionally running over and killing another and also for running over and killing another without any intent to harm—the defendant in the latter case would have a reasonable argument that the death penalty, as applied to him or her, was not proportionate to the offense. But our statutes expressly include different, carefully defined culpable mental states.
It is true that in Solem and a handful of other cases, the Supreme Court has referred to the concept of “relative culpability” in reviewing prison terms to determine whether they were so excessive as to be unconstitutional. But, like Rodriguez/Buck and Davidson, those decisions had nothing to do with psychological or mental conditions or any other personal characteristic that excused or mitigated the defendant’s conduct. Solem involved a defendant’s conviction for a passing a bad check for $100. Under South Dakota’s sentencing laws, because of the defendant’s prior convictions—“all relatively minor” offenses, according to the Court, 463 US at 296-97—he was sentenced to life in prison without the possibility of parole. Solem had nothing to do with “relative culpability” based on the defendant’s mental condition and did not even use that term. Rather, the discussion of culpability in Solem emphasized that the “gravity of an offense” turns primarily on the “harm caused or threatened” and “the culpability of the offender.” Id. at 292. As to the first, the Court noted that “there are widely shared views as to the relative seriousness of crimes,” which are reflected in criminal statutes that generally treat nonviolent crimes as less serious than violent crimes and attempts as less serious than completed crimes. Id. at 292-93. As to the culpability of an offender, the Court noted the “clear distinctions that courts may recognize and apply,” cited various state statutes defining mental states, and observed, “Most would agree that negligent conduct is less serious than intentional conduct.” Id. at 293. It was based on those factors that the Court found the defendant’s offense to be so lacking in gravity, compared to sentences for other crimes and other offenders, that his *634 life sentence without possibility of parole was unconstitutionally disproportionate. Id. at 296-304. Solem provides no support for defendant’s argument that one defendant should be considered “less culpable” than another who engaged in the same criminal conduct, because of the former’s “personal characteristics.”
Under defendant’s approach, there would be little, if any, limit to the factors that a judge or court could consider in determining whether a sentence was disproportionate under Article I, section 16. Defendant cites and relies on State v. Lyle, 854 NW2d 378 (Iowa 2014), which held that mandatory minimum sentences for juvenile offenders were unconstitutional under the state’s cruel and unusual punishment clause, and, under defendant’s theory, age—at least below the age of majority—would be another basis for asserting “reduced culpability.” Also, at the very least, it would appear that defendant’s argument would apply to persons suffering from mental illness; persons who were abused as children or for other reasons have disorders that cause them to lack empathy with the victims of their crimes; or persons in their late teens or early 20s whose brains have not developed to the extent that they can properly evaluate risks, understand the full impact of their conduct on victims, or conform their conduct to laws and other social norms. That open-ended review of the constitutionality of a sentence mandated by statute is unlikely to have been intended by the framers of Article I, section 16, and the majority wisely adopts a narrower approach.
Again, I agree with defendant that courts should have greater discretion than they do in various aspects of the sentencing process, including consideration of age, maturity, psychological condition, and other factors. The mandatory sentences required by Measure 11 should be revisited and revised to allow judges, within reasonable parameters and based on specific factors, greater flexibility to impose sentences that are more appropriate to the defendant, the victim, and the crime. The requirement of Article I, section 16, that the penalty be proportioned to the offense has a role to play in rare cases, but it is of limited utility in ensuring that criminal sentences are appropriate in the great majority of cases.
*635 Instead of defendant’s sweeping theory, the majority adopts a narrow, but principled, approach to the issue presented in this case, and I concur in that opinion.
Kistler and Landau, JJ., join in this concurrence.

 In State v. Wheeler, 343 Or 652, 175 P3d 438 (2007), we reviewed in detail Blackstone’s influential support for the concept of proportionality, noting his view that because of the “difficulty of ensuring that punishments are proportional * * * deference should be granted to the legislature’s choices.” Id. at 659; see also id. C“[T]he quantity of punishment can never be absolutely determined by any standing invariable rule; but it must be left to the arbitration of the legislature to inflict such penalties as are warranted by the nature of laws and society!.]’” (quoting William Blackstone, 4 Commentaries on the Laws of England 12 (1769))); see generally Thomas A. Balmer, Some Thoughts on Proportionality, 87 Or L Rev 783, 787-89 (2008) (discussing Blackstone’s views on proportionality). While I agree with this court’s decisions holding specific sentences unconstitutional as applied to particular defendants and offenses, Blackstone’s argument that courts ordinarily should defer to the legislature with respect to the penalties for specific crimes has always found strong support in the Oregon cases and remains persuasive. See Balmer, 87 Or L Rev at 809-10, 816-17 (discussing roles of legislature and courts in application of Article I, section 16).

 I recognize that the majority suggests at one point that, to the extent “personal characteristics” influence conduct, they may support a determination of “reduced” culpability. 361 Or 616. As discussed, however, the majority’s actual holding in this case rests on defendant’s well-recognized diagnosis of intellectual disability and the evidence that his intellectual functioning is at the level of a 10-year-old and therefore below the age of criminal responsibility in Oregon.